Zimmerman, J.
 

 As often happens in cases of this kind, the evidence as to the origin and cause of the fire was circumstantial. No witness, save one, testified that any fire was to be seen on the outside prior to the time that smoke was observed coming from the premises of the lumber company. The exception was William Forte, called by plaintiffs in error, who stated that between one and two o’clock on the day the fire occurred he was driving his automobile north on Allen street, Southeast, in the city of Canton; that he stopped at a point about twenty feet from where the tracks of the defendant in error intersect Allen street, for a train to pass and that he looked back to the south, some two blocks in the direction of the lumber company, and saw a grass'fire about two feet high on the right of way of defendant in error.
 

 Considering other evidence in the case, the fact that Forte’s employer, with whom he lived, had an action pending against defendant in error for destruction of his barn from the same fire that destroyed the property of the lumber company, and that Forte had served a term in the Mansfield Beformatory for bur-' glary, it may well have been that his testimony carried little or no weight with the jury.
 

 There was some testimony of an indefinite character that a “shifter” or switch engine of defendant in error had passed the lumber company’s premises on the day of the fire and prior to its discovery. However, definite testimony was produced by defendant in error that no switch engine had been within a half mile of the lumber company on such date, prior to the fire. It is admitted that defendant in error’s locomotive No. 1332, with a tender and three passenger cars, passed
 
 *404
 
 the premises of the lumber company at approximately 12:30 p. m. on May 4, 1930.
 

 Three general assignments of error are urged by counsel for plaintiffs in error. First, the improper admission of evidence. Second, the refusal of the trial court to give special charge No. 5 requested by plaintiffs in error. Third, error in the general charge.
 

 Defendant in error called as its witness one A. L. W. Wallace, mechanical engineer, of Washington, D. C., who qualified as an expert in “railway mechanical engineering relating to locomotives and the general car equipment for railroads.” Over objections and exceptions he was allowed to testify as to two different sets of experiments he had made.
 

 On December 16, 1931, he came to Canton. There was placed at his disposal said locomotive No. 1332 with a tender and three passenger cars, in charge of the same crew that had operated such locomotive and its train of cars on the day the fire in question occurred. Mr. Wallace staked off a considerable area parallel with the center line of defendant in error’s right of way and opposite the premises of The City Lumber Company; starting on a line fifteen feet from the center of the track he placed alternate and parallel rows of-pans containing paraffin, and boxes covered with cotton fleece gauze with the fleecy side up. The train was run past this area, under varying conditions — three times coasting and twice “pulling.” There was a fluctuating wind, ranging from practically no wind at all to wind of a velocity of about three miles per hour. After each test an examination was made of the pans of paraffin and of the boxes of cotton fleece gauze. From the coasting tests no material of any kind was f ound in the pans or on the gauze. From the
 
 ‘‘
 
 pulling ’ ’ tests the pans were found to contain a “fine dusty flaky material, but no cinders.”
 

 There is testimony in the record that locomotive No. 1332 had been inspected on May 4, 1930, and on
 
 *405
 
 December 16,1931, and was found to be in good condition bn both occasions, particularly as concerns the wire mesh netting composing a part of the spark-arresting apparatus in the front end.
 

 Preceding his description of the second set of experiments, Mr. Wallace testified that in trials extending over a number of years he had never been able to catch from a locomotive a cinder having a temperature of more than 1200 degrees Fahrenheit; that the fire-box temperature in locomotives of the type of No. 1332 was from 1700 to 1900 degrees under ordinary operating conditions, and that the loss of heat between the fire-box in the rear of a locomotive and the smoke-box in front was about 70. per cent.
 

 The second set of experiments was made in a laboratory at Johns Hopkins University. Cinders were taken from the front part of locomotive No. 1332 of a size too large to pass through the wire mesh of the spark-arrester, which were placed in a crucible, heated to temperatures of 1200, 1400 and 1600 degrees in an electric furnace and dropped onto dry grass under breezes from an electric fan controlled by an anemometer, such breezes being regulated to velocities of from four to seven miles per hour. The only occasion upon which combustion occurred was when bunched cinders were dropped from the crucible onto the grass at a temperature of 1600 degrees.
 

 Obviously, the purpose of this second set of experiments was to demonstrate that even if cinders had escaped from locomotive No. 1332 onto the grass growing on defendant’s right of way near The City Lumber Company, the chances of resulting fire were remote.
 

 Was the admission of the testimony as to these experiments prejudicial error?
 

 Admissibility of evidence relating to experiments made out of court is a matter with which the courts have often been confronted. Certain general, and in
 
 *406
 
 the main, uniform rules have resulted. Such evidence is usually held competent if there is a
 
 substantial similarity
 
 between the conditions existing at the time of the occurrence complained of and when the experiments are made. The existence of identical conditions is not necessary; dissimilarity, when not so marked as to confuse and mislead the jury, going to the weight rather than the admissibility of the evidence. In the very nature of things, much must be left to the discretion of the trial judge, and when such discretion has not been abused reviewing courts will not interfere. 17 Ohio Jurisprudence, 587, Section 479; 8 A. L. R., annotation beginning at page 18; 85 A. L. R., annotation beginning at page 479; II Jones Commentaries on the Law of Evidence, 1376, Paragraph 740; 22 Corpus Juris,-755
 
 et seq.; Sinclair Oil & Gas Co.
 
 v.
 
 Albright, Admx.,
 
 161 Okl., 272, 18 P. (2d.), 540;
 
 Lynch
 
 v.
 
 Missouri-Kansas-Texas Rd. Co.,
 
 333 Mo., 89, 61 S. W. (2d.), 918;
 
 Chatman
 
 v.
 
 Maine Central Rd.,
 
 86 N. H., 317, 167 A., 559;
 
 Ragan
 
 v.
 
 MacGill,
 
 134 Ore., 408, 292 P., 1094;
 
 Washington
 
 v.
 
 City of Seattle,
 
 170 Wash., 371, 16 P. (2d.), 597.
 

 In
 
 Amsbary
 
 v.
 
 Grays Harbor Ry. & Light Co.,
 
 78 Wash., 379, 393, 139 P., 46, 51, 8 A. L. R., 1, 10, the court remarks: “We believe the authorities warrant the assertion that, while appellate courts will not lose sight of the general rule that the admission or rejection of evidence of the result of experiments is largely discretionary in a trial court, the exercise of such discretion will, upon appeal, be viewed somewhat more critically when such evidence is rejected than when it is received.”
 

 In the instant case, the conditions surrounding the first set of experiments made by Mr. Wallace were essentially the same as those which obtained on May 4, 1930, when locomotive No. 1332 and its train of cars passed the premises of The City Lumber Company. Counsel for plaintiffs in error raise the objection that
 
 *407
 
 the fire occurred in May while the experiments took place in December, and that the difference in temperature constituted a sufficient variance to require the exclusion of this evidence. However, the argument loses force when it is considered that the plain and only purpose of the experiments was to show that locomotive No. 1332 emitted no cinders and in face of Mr. Wallace’s uncontradicted testimony that weather conditions as to temperature have nothing to do with the number of cinders which a locomotive may emit.
 

 The second set of experiments, performed in a laboratory, were based on the assumption that locomotive No. 1332 may have emitted cinders, and that if this were so the cinders passing from the locomotive to the vegetation on the right of way would have lost so much heat that no combustion would have occurred. These experiments, while performed under artificial conditions, duplicated important details which would have existed had locomotive No. 1332 cast cinders onto the defendant’s right of way near The City Lumber Company on May 4,1930.
 

 The admissibility of evidence as to a somewhat similar experiment was presented to the Supreme Judicial Court of Massachusetts in the case of
 
 Guinan
 
 v.
 
 Famous Players-Lasky Corp.,
 
 267 Mass., 501, 167 N. E., 235. There a passenger on a street car suffered personal injuries due to the explosion of a quantity of scrap motion picture film in a burlap bag placed in proximity to a heater. Evidence was admitted by the trial judge covering experiments testing the inflammable and explosive properties of motion picture film. This was assigned as error. In passing on the matter, the Supreme Judicial Court stated at page 522 of the opinion: “The experiments in the case at bar consisted of subjecting pieces of film to various degrees of heat, to contact with electric sparks and to burning to ascertain its inflammable character. Small pieces of film were pulverized, inserted in a cartridge and
 
 *408
 
 fired from a revolver to determine the explosive qualities of the film. Obviously an exact duplication of an explosion in a street car would not be practicable. We are of opinion that the judge was warranted in admitting evidence of the methods and results of the experiments to assist the jury in determining the inflammable and explosive character of the scrap film * * * and that it cannot be said that the conclusion of the judge that the experiments would be of aid to the jury was clearly wrong.”
 

 In the present case, where circumstantial evidence was the only kind offered against defendant in error, we think it was entitled to any benefit which may have been derived from the testimony as to these experiments. We are certainly unwilling to hold that the trial judge so abused his discretion in admitting this testimony as to require a reversal.
 

 Counsel for plaintiffs in error also urge that the trial judge should have instructed the jury that the weight to be given this testimony was dependent upon the similarity of conditions existing at the times of the experiments and those existing on the day of the fire. The testimony itself disclosed the dissimilarities, and it is to be assumed that the jurors, exercising ordinary intelligence, made allowances therefor. Besides, if counsel desired an instruction of this kind, they should have requested it.
 

 The next assignment of error on the admission of evidence has to do particularly with the testimony of Mrs. Edna Moreland, wife of C. H. Moreland, former secretary and manager of The City Lumber Company, who had died before the trial of this case, to the effect that on every Sunday for a period of three months prior to the fire she and her husband had gone to The City Lumber Company; that on each occasion they had found boys playing on the premises and around the company’s motor trucks parked there, and that sometimes these boys were smoking. Of course- this
 
 *409
 
 testimony was introduced to suggest an origin for the fire other than a locomotive. It must be conceded that it was on the very border line of competency, and might with propriety have been excluded. But was its admission reversible error? It definitely showed an
 
 habitual
 
 Sunday use of the lumber company’s property by smoking boys, and that such use possessed potentialities for causing a conflagration.
 

 In the case of
 
 Ireland
 
 v.
 
 Cincinnati, W. & M. Rd. Co., 79
 
 Mich., 163, 44 N. W., 426, the court remarks in the opinion: “The origin of the fire was problematical, and depended, not upon direct and positive proof, but upon inferences to be drawn from facts proved. It was competent in such case for defendant to introduce testimony having a tendency to prove that the fire was of incendiary origin; and the errors assigned upon the admission of such testimony are overruled.”
 

 In the case of
 
 Pope
 
 v.
 
 Boston & Maine Rd., 79
 
 N. H., 52, 104 A., 403, the fact that occupants of plaintiff’s buildings, claimed to have been burned by defendant railroad, used liquor to excess, sold it on the premises, concealed it in the hay in the barn, and had been seen to search for it with a lighted match, was held to be relevant to the issue of the cause of the fire.
 

 In
 
 Union Seed & Fertilizer Co.
 
 v.
 
 St. Louis, I. M. & S. Ry. Co.,
 
 121 Ark., 585, 181 S. W., 898, suit was brought to recover for the destruction of a warehouse situated near a steam railway company’s tracks by fire alleged to have been caused by the operation of an engine. The court held it was competent to show that persons had been permitted to smoke about the warehouse, and that a man was smoking a cigarette therein the evening before the fire.
 

 For decisions of like purport, see
 
 Sound Timber Co.
 
 v.
 
 Danaher Lumber Co.,
 
 112 Wash., 314, 192 P., 941;
 
 Douglass
 
 v.
 
 Central of Georgia Ry. Co.,
 
 201 Ala., 395, 78 So., 457.
 

 While it is our opinion that Mrs. Moreland’s testi
 
 *410
 
 mony was so problematical as to have warranted rejection, we are not prepared to hold its admission reversible error.
 

 Another alleged error is the admission in evidence of an nnpleaded contract between defendant in error and the Heibner Company, Inc., which later became The City Lumber Company through amendment of the articles of incorporation, whereby in consideration of defendant in error running a side track into the lumber company’s premises the lumber company agreed to absolve it from liability for fire loss occasioned by locomotives operated on the side track or in the vicinity in performing services for the lumber company.
 

 The court instructed the jury in the general charge that this contract would release defendant in error from liability for causing fire only in the event it was using the side track or operating in the vicinity while serving the lumber company.
 

 Since there was no evidence in the case that any locomotive of defendant in error had been performing any services for the lumber company on the side track or elsewhere at any time near the occurrence of the fire, the contract was incompetent, irrelevant and immaterial, and should have been excluded. However, its admission was not error of such moment as to call for reversal.
 

 The trial court refused to give special charge No. 5 requested by plaintiffs in error, reading as follows:
 

 “I further charge you as a matter of law that if you find by a preponderance of the evidence that the fire which destroyed the property of The City Lumber Company originated on the Lumber Company’s grounds and was caused by sparks or cinders from the engines of the defendant company, such company would be liable for the damages caused to such Lumber Company and your verdict must be for the plaintiffs.”
 

 In its general charge the court told the jury, in sub
 
 *411
 
 stance, that it was incumbent on plaintiffs in error to prove that the fire originated on the property of defendant in error and was communicated therefrom to that of the lumber company.
 

 We find no error in the refusal of special charge No. 5 or in the part of the general charge complained of. The allegations of the petition specifically charged defendant in error with negligently starting a fire on its right of way, which traveled to the property of the lumber company. This was the theory upon which the case of plaintiffs in error was founded, and was supported in some degree by the testimony of William Forte. There is not a shred of testimony in the record that defendant in error caused the fire in any other way.
 

 It has been held by this court that a charge to a jury on an issue not in the pleadings and on a theory upon which the case was not tried, is ground for reversal.
 
 Toledo Rys. & Light Co.
 
 v.
 
 Campbell,
 
 79 Ohio St., 441, 87 N. E., 1142. And see the first paragraph of the syllabus in
 
 Cincinnati Traction Co.
 
 v.
 
 Forrest,
 
 73 Ohio St., 1, 75 N. E., 818.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Matthias and Day, JJ., concur.
 

 Jones, J., not participating.