**The STATE of Ohio, Appellee,**

**v.**

**DEHNER, Appellant.** ▮

[Cite as *State v. Dehner* (1991), 74 Ohio App.3d 431.]

Court of Appeals of Ohio,
Ross County.

No. 1635.

Decided June 4, 1991.

*William J. Corzine III*, Law Director, for appellee.

**432**

*John B. Street,* for appellant.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court after a bench trial finding Penny S. Dehner, defendant below and appellant herein, guilty of violating R.C. 4511.19(A)(3), which proscribes the operation of a motor vehicle with a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of breath, a first degree misdemeanor. The following error is assigned:

"The trial court erred, and abused its discretion, in ruling that the results of an experiment performed by defendant's expert witness were not admissible."

The following facts pertinent to this appeal appear in the record. On May 10, 1989, at about 1:06 A.M., Robert Frizzell, an officer of the Chillicothe Police Department, was on patrol on the west side of Chillicothe, Ohio. He observed a black Mercury pull out of Central Center on to Western Avenue, accelerate rapidly and proceed west across the center line. The vehicle returned to the westbound lane and continued to accelerate to fifty-five miles per hour, the speed limit being thirty-five miles per hour. The vehicle slowed and turned into Governor's Place. The officer used his lights and siren and stopped the vehicle which was being driven by appellant.

As the officer approached the vehicle he observed that appellant's eyes were bloodshot and that her speech was slurred. After giving her field sobriety tests—*i.e.,* a balance test and a finger to nose test—and observing that appellant was unsteady on her feet and had an odor of alcohol about her, Officer Frizzell arrested her for driving while under the influence of alcohol and transported her to the police station. At 1:27 A.M., an intoxilyzer test was given with a test result of .245. The prescribed forms utilized in giving of the test were introduced at trial.

Counsel for appellant had her examined by Larry M. Dehus, B.S., M.S., practicing as a forensic scientist. A report was issued to appellant's counsel and appellant intended to call the scientist as a defense witness at trial. The report recited, *inter alia,* the following:

"On July 12, 1989 Mrs. Dehner did present herself to this laboratory and the following experiment was performed:

"Mrs. Dehner consumed a one ounce drink of 86.8 proof Johnnie Walker Red Label Scotch that was poured over ice and consumed over a fifteen minute period. Mrs. Dehner was then observed by this examiner for a twenty minute period and then she was asked to produce a saliva specimen by spitting into a glass beaker.

"The saliva specimen was analyzed by gas chromatography and found to contain a significant level of ethyl alcohol. It is apparent that this alcohol was retained by her partial plate.

"The breath testing instruments, including the intoxilyzer, operate on the assumption that there is no residual alcohol in the mouth. If any residual alcohol persists in the mouth after the twenty minute waiting period, then a falsely high reading would be obtained on the intoxilyzer and the results would not be reliable.

"As you had related in your letter and as Mrs. Dehner confirmed to this examiner on the date of her visit, she had consumed 6 one ounce scotch on the rocks drinks in the twelve hours prior to her arrest and subsequent test for alcohol. She reported that the first drink was consumed at approximately 1:30 p.m. on May 9th, the second drink at 3:00 p.m. on May 9th, the third drink at approximately 3:45 p.m. on May 9th, the fourth drink at approximately 9:00 p.m. on May 9th, the fifth drink at approximately 10:30 p.m. on May 9th and the sixth and final drink at approximately 12:45 a.m. on May 10, 1989. Based upon Mrs. Dehner's stated weight of 168 pounds and the known average rate of metabolism for alcohol, the three drinks that she would have had between 1:30 and 3:45 p.m. on May 9th would have been completely metabolized and out of her system before she had the three additional drinks in the evening. Again, based upon her weight and the time period over which the drinks were consumed, it is the opinion of this examiner that the highest blood alcohol level that Mrs. Dehner could have had at the time of her test at 1:37 a.m. on May 10, 1989 would have been 0.04%."

Appellee filed a motion *in limine* requesting that the oral testimony of Larry M. Dehus and his report be excluded from evidence. Appellant then filed a motion to suppress the result of the intoxilyzer test for the reason, *inter alia*, that "[t]he intoxilyzer test result was flawed because alcohol was retained by the defendant's partial dental plate." The parties filed the following stipulations:

"1. The attached curriculum vitae of Larry Dehus is attached and agreed to for the purpose of laying a foundation for his expert testimony.

"2. Larry Dehus would have testified to the opinion set forth in his letter dated July 13, 1989. That letter is attached.

"3. Larry Dehus would further testify that the defendant did not appear to have consumed any alcohol other than that described in his letter dated July 13, 1989, before the experiment to be conducted on July 12, 1989; that defendant did not consume or place any object in her mouth while the experiment was being conducted; that the defendant wore a partial dental

plate; that significant amounts of alcohol were retained by her partial plate; and that the intoxilyzer test result given to defendant was not reliable.

"4. Larry Dehus would further testify that the highest blood alcohol level defendant could have had at the time of the intoxilyzer test was 0.04%.

"5. Myna Hill would have testified that she was the barmaid at the Fox Farm Inn on May 9, 1989. She waited on the defendant that afternoon and served her three drinks of Dewars Scotch between 1:30 P.M. and 4:30 P.M.

"6. Ruth White would have testified that she was working at Chilli's on May 9–10, 1989. She waited on the defendant and served her three drinks of Johnny Walker Scotch between 9:00 P.M. on May 9, 1989, and 1:00 A.M. on May 10, 1989; and that, in her opinion, defendant was not under the influence of alcohol when she left Chilli's bar."

Based on the stipulations, the court by entry sustained the motion *in limine* and overruled the motion to suppress. The reason given for its ruling was that there was "no substantial similarity with the conditions as existed at this time of the breath test." At trial the court refused to admit that portion of the proposed stipulated testimony of Dehus that the breath test given by the police was inaccurate because of the retention of alcohol by her partial denture but did admit into evidence the portion of the report that, based upon the amount of and time of consumption of alcohol, appellant's breath alcohol content was .04 percent. Appellant was found guilty and sentence was imposed.

The thrust of appellant's sole assignment of error is that the court prejudicially erred in refusing to admit the result of the experiment by appellant's expert witness. The applicable law is succinctly summarized by Justice Locher in *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382, wherein the Supreme Court upheld a trial court ruling denying admission of a defense expert witness as to the simulated testing of a defendant on a BAC verifier machine by stating the following:

"Evid.R. 402 provides:

" 'All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.'

"Evid.R. 702 specifically refers to admissibility of scientific testimony:

" 'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise.'

"In a case decided before the adoption of the Evidence Rules, this court held:

" '1. Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence.

" '2. The admission or rejection of evidence as to such experiments is a matter *peculiarly* within the discretion of the trial judge, and when such discretion has not been palpably abused reviewing courts will not interfere.' (Emphasis added.) *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraphs one and two of the syllabus.

"It is axiomatic that a determination as to the admissibility of evidence is a matter within the sound discretion of the trial court. See *Calderon v. Sharkey* (1982), 70 Ohio St.2d [218, 24 O.O.3d 322, 436 N.E.2d 1008]. The issue of whether testimony is relevant or irrelevant, confusing or misleading, is best decided by the trial judge who is in a significantly better position to analyze the impact of the evidence on the jury. Although Evid.R. 702 expressly allows for the admission of scientific testimony, it does not mandate such admission." *Columbus v. Taylor,* 39 Ohio St.3d at 163–164, 529 N.E.2d at 1384.

In denying admissibility of testimony and the report of appellant's expert witness, the trial court herein reasoned as follows:

"[T]he court would conclude that it is not abusing its discretion in ruling that the experiment, as designed by Defendant, has no substantial similarity with the conditions as existed at the time of the breath test. First, the timing is critical. Herein, the Defendant admits consuming the sixth and final drink of the evening at 12:45 A.M. Her breath test occurred at 1:37 A.M. At the very least, why didn't the experiment involve a lapse of 52 minutes? Or, if the experiment presumed that Defendant consumed her final drink over a fifteen minute period (arrest time is allegedly 1:00 A.M. at an intersection a short distance away from the bar in which the alcohol is consumed), why not 37 minutes? The court is left to wonder whether the same was tried but the results disappointed (if elicited on cross-examination, the effect would be devastating). The court is not assured in any manner that the alcoholic beverage was exactly the same in its proportion of alcohol to other ingredi-

ents. The report states that the Defendant was observed by Mr. Dehus for twenty minutes after the consumption of the drink but does not say whether any foreign object was placed in her mouth as all the breath testing instrument log entry forms require. The Law Director's memorandum points out a failure to consider whether Defendant consumed other alcoholic beverages on July 12th, 1989, the date of the experiment. Mr. Dehus then reports that an analysis of Defendant's saliva, not her breath, revealed a 'significant' level of ethyl alcohol. In his concluding paragraphs, Mr. Dehus is not shy about exploiting specifics to arrive at his conclusion based on reported consumption, time and body weight of Defendant, why the failure to define 'significant'? Of course, if the concentration is measured, then the experimenter might have had to measure the actual quantifiable effect of the solution of alcohol allegedly trapped in Defendant's mouth on the air passing through it. Perhaps there is no practical way to do this. Since the experiment is not fairly designed, the reported results are: a. not relevant; b. so marked in their dissimilarity as to confuse and mislead the jury; c. sloppy science; and, d. inadmissible."

We deem it significant that the expert fails to discuss or elucidate as to how long, after twenty minutes of consumption of alcohol, the alcohol purportedly held back by the denture would continue to affect the test results. The critical question is whether the test result was inaccurate when given at 1:37 A.M., which is fifty-two minutes after appellant's last drink. The issue is not whether this court would have admitted the testimony but whether the trial court abused its discretion. To constitute an abuse of discretion the decision must be unreasonable, arbitrary or unconscionable. On the record before us, we are not persuaded that an abuse of discretion requiring reversal occurred.[1]

Accordingly, the assignment of error is overruled and the judgment affirmed.

*Judgment affirmed.*

HARSHA, J., concurs.

GREY, J., dissents.

---

**1.** It is to be noted that alcohol breath tests must be performed in accordance with the operational check list of each testing machine. Ohio Adm.Code 3701.53–02. The breath testing report forms with operational check lists for all machines appears in Painter & Looker, Ohio Driving Under the Influence Law (2 Ed.1990) 84, Section 9.09 *et seq.*, and it requires the subject to be observed for twenty minutes prior to the test and states, *inter alia,* at 74, Section 9.06 that "[t]wenty minutes is deemed a physiologically sufficient time to allow for the elimination from the mouth or throat of any substance which the suspect may have previously ingested." Neither the health department regulations nor operational check lists require removal of dentures prior to testing.

GREY, Judge, dissenting.

I respectfully dissent, because the trial court used the wrong standard for the admission of evidence in DUI cases. For example, the trial court rejected appellant's proffered evidence in part because " * * * the report states that the Defendant was observed by Mr. Dehus for twenty minutes after the consumption of the drink but does not say whether any foreign object was placed in her mouth as all the breath testing instrument log entry forms require."

However, paragraph three of the syllabus in *State v. Brown* (1975), 49 Ohio App.2d 104, 3 O.O.3d 161, 359 N.E.2d 706, states:

"A failure to observe a defendant continuously for twenty minutes prior to the administration of a breathalyzer test goes to the weight to be accorded the results of the test rather than its admissibility, where the defendant offers no evidence tending to establish that he ingested some foreign substance during the period in which he was unobserved."

I began with this example only because it shows the trial court assessed the weight of this evidence and not its relevance, but I have another, more substantial objection to the trial court's refusal to permit this evidence. If we are to rely on these test results for convictions in *per se* cases, then we must be particularly careful to be sure the tests are accurate. The primary duty of ensuring the accuracy of the tests falls by statute on the Department of Health, not on the courts. The legislature has authorized testing according to standards established by the Department of Health, and if a test is administered in accordance with those standards, it is relevant and admissible. *Cincinnati v. Sand* (1975), 43 Ohio St.2d 79, 72 O.O.2d 44, 330 N.E.2d 908; *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740.

The use of these tests is constitutional. *State v. Tanner* (1984), 15 Ohio St.3d 1, 15 OBR 1, 472 N.E.2d 689. A defendant may not challenge the validity of breath tests in general or the methods and procedures adopted by the Department of Health. *State v. Brockway* (1981), 2 Ohio App.3d 227, 2 OBR 247, 441 N.E.2d 602; *Columbus v. Day* (1985), 24 Ohio App.3d 173, 24 OBR 263, 493 N.E.2d 1002.

However, in *Tanner, supra,* 15 Ohio St.3d at 6, 15 OBR at 5, 472 N.E.2d at 693, the Supreme Court held:

"The defendant may still challenge the accuracy of his specific test results, although he may not challenge the general accuracy of the legislatively determined test procedure as a valid scientific means of determining blood alcohol levels."

The proffered evidence made one significant point, that the test which was administered to Dehner was not accurate. This kind of evidence is always relevant and admissible under the holding in *State v. Boyd* (1985), 18 Ohio St.3d 30, 18 OBR 68, 479 N.E.2d 850. The proffered evidence does not challenge Ohio's system of testing, but only the result in Dehner's test.

In this case, the defense indicated its intention to call Dehus as an expert witness and the state responded with a motion *in limine*. The issue was presented to the court on a stipulation on matters of relevance, but the court decided the issue on matters of weight, as noted at the beginning of this dissent. Essentially, the court raised all the questions which would have to be asked to establish a foundation for this expert's opinion, and then ruled that they could not be asked.

I am particularly distressed by the trial court's refusal to grant this expert the opportunity to lay a foundation for his testimony and then to characterize the expert's work as "sloppy science." For example, the court said, "Mr. Dehus then reports that an analysis of defendant's saliva, not her breath, revealed a 'significant' level of ethyl alcohol" and then adds " * * * why the failure to define 'significant'?" The meaning of the word "significant" is obvious—it means significant in terms of what is being looked for. Dehus used gas chromatography, a far more accurate method than a simple intoxilyzer machine. Since gas chromatography would discover trace amounts not measurable by an intoxilyzer, he had to qualify his findings by using the word "significant" to mean significant in terms of what the intoxilyzer can measure. Even though the court's characterization is insulting and unfair, implicit in the comment is the standard the court used—"sloppy science" is a judgment on the weight and credibility, not on its relevance.

Finally, I would make one more point on the nature of the challenge to the results of breath testing. Where a defendant offers testimony about the inaccuracy of any particular test, this helps the statutory system. It makes it better, more accurate, more just. For example, several years ago, radio frequency interference ("RFI") challenges came into vogue, and many DUI defendants challenged their tests on the grounds that radio waves can affect the accuracy of some tests. These challenges did not harm the system, but made it better. When it appeared that there was some truth to the RFI defense, the Department of Health amended Ohio Adm.Code 3701–53–02–(C) to require RFI surveys and the placement of the machines to avoid this problem.

I would not venture a guess as to whether alcohol was trapped in Dehner's dental plate so as to make her breath test inaccurate, but I also would not close my mind to expert evidence which might establish that possibility. I

most definitely would not hold that evidence which make the existence of that fact more probable is not relevant.

Thus I dissent.