PAUL et al., Appellants,

v.

MOORE et al., Appellees.

[Cite as *Paul v. Moore* (1995), 102 Ohio App.3d 748.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA94–09–069.

Decided April 17, 1995.

750

*Benjamin, Yocum & Heather, Anthony J. Iaciofano* and *Jeffrey P. McSherry,* for appellants.

*Donald W. White,* Clermont County Prosecuting Attorney, and *Elizabeth Mason,* for appellee Clermont County Board of County Commissioners.

*Clark, Ward & Cave* and *Douglas J. May,* for appellee Batavia Township Board of Trustees.

WALSH, Presiding Judge.

Plaintiffs-appellants, Kathy Paul and James Barr, appeal a jury verdict in favor of defendants-appellees, Batavia Township Board of Trustees ("the township") and Clermont County Board of Commissioners ("the county"), in a personal injury action.

On August 21, 1991, appellant Kathy Paul was driving a horse and cart in which appellant James Barr was a passenger. Appellants were accompanied by four other horse-drawn carts on this pleasure outing. The horses and carts were traveling downhill on Ross Road in Batavia Township, Clermont County, Ohio.

Ross Road is narrow, steep and winding and lies adjacent to a steep embankment which leads down to a creekbed. The road has no guardrail.

While traveling down Ross Road, the cart driver in the lead brought his horse to a stop to permit it to rest for a few moments. Paul, who was second in line, was unable to halt her horse. The horse began sidestepping to the left and went over the edge, hauling the cart and appellants down the embankment and into the creekbed. As a result, appellants sustained serious injuries.

Appellants sued the county and the township, alleging, among other things, that the township had failed to properly maintain Ross Road and the county had failed to erect suitable guardrails along the road pursuant to R.C. 5591.36. After a jury trial, final judgment in favor of appellees was entered on August 8, 1994.

On appeal, appellants present three assignments of error for review. In their first assignment of error, appellants contend that the trial court erred in its instructions to the jury regarding the meaning of the term "perpendicular" as used in R.C. 5591.36. We disagree.

Appellants allege that the county is liable for its failure to install a guardrail along Ross Road as required by R.C. 5591.36. R.C. 5591.36 provides in part:

"The board [of county commissioners] shall * * * protect, by suitable guardrails, all perpendicular wash banks more than eight feet in height, where such banks have an immediate connection with a public highway other than state highways, or are adjacent thereto in an unprotected condition."

The county's proposed jury instruction on the meaning of perpendicular relied upon existing case law. See *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502 ("perpendicular" means extremely steep); *Wyandot Cty. Bd. of Commrs. v. Boucher* (1918), 98 Ohio St. 263, 120 N.E. 700 (a slope of forty-five degrees is not "perpendicular" for purposes of the statute); *Jenkins v. Harrison Twp. Trustees* (Oct. 4, 1982), Scioto App. No. 1385, unreported, 1982 WL 3545 (a wash bank of forty-five degrees is not "perpendicular," but one of sixty-five to seventy degrees presents a jury question). Appellants' proposed instruction relied upon the *Franks* and *Jenkins* cases.

The instruction eventually given to the jury provided:

"Now, perpendicular means very steep, but must exceed forty-five degrees. It does not mean a ninety degree washbank—[a] washbank so steep it falls straight down. Very few, if any, washbanks are exactly ninety degrees. The sides of washbanks generally carry sediment from the top. The sediment accumulates at the bottom. [W]ashbanks, over time and in accordance with the general principals [*sic*] of rain, of rain water, sediment and gravity, gradually erode and change their angles. Nature carries no protractor."

Appellants maintain that the trial court erred in instructing the jury, in accordance with language in the *Boucher* case, that to be considered perpendicular, the bank "must exceed forty-five degrees." Appellants claim that *Boucher* is in conflict with *Franks* and *Jenkins*. However, after reviewing all three cases, we find them to be reconcilable. Furthermore, contrary to appellants' contentions, we find nothing in *Franks* that either expressly or impliedly overrules *Boucher*.

In *Franks*, the Ohio Supreme Court relied upon the *Jenkins* decision in concluding that the common meaning of the term "perpendicular" is "very steep," and in holding that "perpendicular" can include a slope of seventy degrees. *Franks, supra,* 69 Ohio St.3d at 351, 632 N.E.2d at 506. The *Jenkins* court stated that a perpendicular bank need not be exactly ninety degrees. *Jenkins, supra.* Citing *Boucher,* the *Jenkins* court explained that the Ohio Supreme Court has held a wash bank of only forty-five degrees is not perpendicular within the meaning of the statute. *Id.* The court then concluded that a bank of sixty-five to seventy degrees presents a jury question as to whether the bank is perpendicular for purposes of the statute. *Id.*

 Thus, these cases, rather than being in conflict as appellants contend, simply establish the limits of the term "perpendicular" for purposes of the statute. Whether a bank whose slope is greater than forty-five and less than ninety degrees is "extremely steep" so as to constitute a perpendicular bank for purposes of the statute is a matter for the jury.

Since the trial court's instruction to the jury on the issue of perpendicularity for purposes of R.C. 5591.36 was in accordance with the applicable case law in *Franks, Jenkins,* and *Boucher,* we find that the instruction was proper. Appellants' first assignment of error is accordingly overruled.

In their second assignment of error, appellants contend that the trial court erred in admitting into evidence the testimony of witnesses Steven Case and Tobin Hubener and the cross-section survey of the accident scene. We disagree.

Specifically, appellants claim that the trial court should not have admitted the testimony of county employees Case, a surveyor, and Hubener, a computer-aided drafting operator, because these witnesses were experts who were not identified to appellants until after the court-ordered expert witness identification date. The trial court, finding that these witnesses were testifying as lay witnesses, not experts, admitted their testimony.

 The decision to classify a particular witness as an expert or a lay witness is a matter within the sound discretion of the trial court. See *State v. Wages* (1993), 87 Ohio App.3d 780, 786, 623 N.E.2d 193, 197; *Smith v. Chatwood* (Aug. 15, 1990), Clark App. No. 2618, unreported, 1990 WL 119270. From a review of

the record, it appears that, despite the fact that these witnesses could have been used as experts based upon their specialized technical training, they were not being offered as expert witnesses pursuant to Evid.R. 702; rather, they were being used pursuant to the authentication and identification provisions of Evid.R. 901 solely to lay a foundation for three exhibits which they jointly created to graphically represent a cross-section survey of the accident scene. See Evid.R. 901(B)(1) (testimony of witness with knowledge); Evid.R. 901(B)(9) (evidence describing process or system).

At trial, Case testified that, pursuant to instructions given him by the engineer's office, he went to the accident scene on two occasions in July 1994 and performed surveys. He then described the equipment and the process he used to conduct the survey. Hubener testified that, by plugging the data generated by Case's survey into a computer, he produced a graphic representation of the survey. He also described the equipment and process he used.

■ Neither of these witnesses drew any conclusions or offered any expert opinion testimony about the exhibits, the slope of the embankment, or other topographical conditions at the accident scene. Under these circumstances, we find no abuse of discretion in the trial court's decision to treat Case and Hubener as lay, rather than expert, witnesses. See *State v. English* (1991), 77 Ohio App.3d 371, 602 N.E.2d 655 (trial court did not abuse discretion in treating an otherwise qualified expert as a lay witness where, rather than giving opinion testimony, he was merely describing how he had conducted his experiment and his observations). See, also, *Long v. Isakov* (1989), 58 Ohio App.3d 46, 568 N.E.2d 707 (trial court did not abuse discretion in allowing a doctor to testify as factual, rather than expert, witness where the doctor testified only as to results of an examination he had conducted on patient and did not express opinion on the ultimate issue).

■ Furthermore, even if Case and Hubener technically should have been classified as expert witnesses and could have qualified as experts, we see no prejudice to appellants from the trial court's failure to do so under the facts of this case: both witnesses were identified to and deposed by appellants prior to trial, and appellants had an opportunity to fully cross-examine both witnesses at trial as to how they prepared the cross-section survey. See *Long, supra,* 58 Ohio App.3d at 51, 568 N.E.2d at 712 (testimony will not be excluded where opposing party can show no surprise).

Appellants also claim that the trial court erred in admitting into evidence the cross-section survey of the accident scene prepared by Case and Hubener, as the conditions of the area at the time the survey was taken were not substantially similar to the conditions at the time of the accident. Appellants further contend

that the trial court erred in admitting the testimony of the county's expert, Carl Hartman, as his opinion as to the slope of the embankment at the time of the accident was based upon this survey.

It is within the sound discretion of the trial court to admit or reject evidence of out-of-court experiments. *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 95, 566 N.E.2d 154, 158. Such evidence is generally admissible if there is a substantial similarity between conditions existing at the time the experiment is done and those existing at the time of the occurrence in dispute. See *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraph one of the syllabus.

The record indicates that the survey of the accident site was taken nearly three years after the accident occurred, after three hundred to three hundred sixty tons of loose concrete pieces had been dumped along the embankment, and after Ross Road had been widened an additional five feet. Accordingly, appellants' expert, William Jackman, concluded that it was unreasonable to estimate the slope of the embankment at the site because the topographical conditions at the time of the accident were substantially different from the conditions at the time the survey was taken.

However, the county's expert, Carl Hartman, disagreed. Hartman testified that, in his professional opinion, the average slope of the embankment had not been modified or affected in any way by the addition of the concrete or the widening of the roadway. Hartman felt that the 1994 survey accurately approximated the topographical conditions as they existed at the time of the accident, despite the addition of the concrete pieces, because the surveyors were able to measure the slope of the embankment from the original ground beneath the concrete pieces. Hartman also testified that, in his opinion, the slope of the embankment had not changed drastically in the three-year time span.

Moreover, Hartman's opinion of the slope of the embankment at the time of the accident was not based solely upon the survey. Even before the survey was taken, Hartman personally visited the accident site and reviewed photographs of the site, some of which had been taken immediately after the accident. Hartman testified that, based upon these sources, it was his professional opinion that the slope of the embankment at the time of the accident was no greater than forty-five degrees. Hartman explained that he was able to factor out the addition of the concrete pieces in estimating the slope by examining the existing slope of the embankment beneath the concrete and the slope of the overall area, including areas where no concrete had been added. According to Hartman, the results of the cross-section survey, which indicated a slope of slightly less than forty-five degrees, served only to confirm and corroborate the results of his previous professional review.

■ After a review of the record, we find that any dissimilarities in the conditions of Ross Road and the embankment at the time of the accident and at the time the survey was conducted were not so marked as to confuse or mislead the jury; therefore, these differences in condition go to the weight rather than the admissibility of the evidence. See *St. Paul, supra.* The jury had before it the competing testimony of each party's experts. The credibility of these experts and the weight to be given their testimony was a matter within the jury's province. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Under these circumstances, we find that the trial court acted within its discretion in admitting the 1994 survey and the testimony of Hartman. Appellants' second assignment of error is accordingly overruled.

In their third assignment of error, appellants contend that the trial court erred in excluding evidence as to the width of Ross Road in 1973 and whether the township had widened Ross Road in the years prior to the accident in furtherance of a decision or ongoing policy. We disagree.

Appellants attempt to hold the township liable for the failure to properly maintain Ross Road under R.C. 2744.02(B)(3), whereby a political subdivision can be liable for the failure to keep a public road "open, in repair, and free from nuisance." After a review of the record, we find that the trial court properly excluded evidence as to the width of Ross Road in 1973 and the widening of Ross Road, or lack thereof, in the years prior to the accident.

■ First, the width of Ross Road alone does not constitute a nuisance for which the township can be held liable under R.C. 2744.02(B)(3), because it relates to the construction or design of the road. See *Franks, supra,* 69 Ohio St.3d at 349–350, 632 N.E.2d at 505–506. In the absence of evidence that the township acted with malicious purpose, in bad faith, or in a wanton or reckless manner, liability cannot be imposed for not widening Ross Road. See R.C. 2744.03(A)(5); *Burns v. Ohio Dept. of Transp.* (1987), 39 Ohio App.3d 126, 529 N.E.2d 1283, paragraph one of the syllabus (decision whether to expand a roadway is a discretionary function to which immunity attaches).

■ Second, appellants' negligent implementation claim is also without merit. According to the negligent implementation doctrine, although a political subdivision is immune from liability for those acts or omissions which involve the making of basic policy decisions which are characterized by the exercise of judgment or discretion, once a political subdivision makes a decision to do something, it can be held liable for negligently implementing that decision. *Franks, supra,* 69 Ohio St.3d at 349, 632 N.E.2d at 505–506, citing *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808.

 However, there is no evidence in the record that the township ever considered or passed any legislation or adopted any specific policy to widen Ross Road. The township's ongoing "berming" activities on Ross Road and *all* other township roads, and the dumping of concrete pieces along the embankment on Ross Road as part of the township's continuing effort to combat erosion, while incidentally widening the road and building up the embankment a bit, do not amount to proof of the existence of any specific legislative decision or official policy to widen Ross Road.[1] Therefore, there simply was no decision or policy for the township to implement, negligently or otherwise.

 Finally, appellants' claim that, even in the absence of any decision to widen Ross Road, the township can be held liable under R.C. 2744.02(B)(3) for negligently failing to maintain Ross Road under its ongoing maintenance policy. We find this argument to be without merit. Contrary to appellants' contention, the evidence at trial does not indicate that widening Ross Road was part of the township's ongoing maintenance policy; rather, as discussed above, the widening was merely an incidental result of the township's maintenance procedure of berming, which was carried out on all township roads.

 Furthermore, there is no evidence that the township's berming or other maintenance procedures were improperly or negligently performed. In addition, the discretionary exception to liability, which provides that a political subdivision is "immune from liability if the injury * * * resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources," applies. See R.C. 2744.03(A)(5).

 The trial court has broad discretion in the admission and exclusion of evidence. *State v. Withers* (1975), 44 Ohio St.2d 53, 55, 73 O.O.2d 280, 281, 337 N.E.2d 780, 781. Since any evidence regarding the width of Ross Road in 1973, or whether or not the township widened the road in the years prior to the accident, could not support a finding of liability on the township under the facts of this case, such evidence was irrelevant and properly excluded. See Evid.R. 402 (evidence which is not relevant is not admissible). Appellants' third assignment of error is accordingly overruled.

*Judgment affirmed.*

KOEHLER and POWELL, JJ., concur.

---

1. "Berming" refers to the process of periodically spreading gravel along the ground immediately adjacent to a roadway. As an incidental effect of berming, road widening of several inches may occur over time when repaving overlaps the gravel surface by inches.