DECISION.
Plaintiffs-appellants, Jacqueline M. Loge and Clarence Freeman, appeal from the judgment of the Hamilton County Common Pleas Court rendered in favor of defendants-appellees, Daniel W. Miniard and Hendy, Inc., on appellants' claims for personal injuries and property damage resulting from an automobile accident. On appeal, appellants raise three assignments of error. Because we find none of these assignments to be well taken, we affirm the trial court's judgment.
On the morning of December 2, 1998, Miniard, an employee of Hendy, Inc., was driving a tractor with a flatbed trailer on Carolina Trace, a two-lane road in Harrison, Ohio. A thirty-six-thousand-pound yellow bulldozer, which was to be delivered to a worksite, was secured to the flatbed trailer. When Miniard neared the worksite, he backed the flatbed trailer into a private driveway located directly off of Carolina Trace. The tractor, however, remained on Carolina Trace, blocking the northbound lane. Unbeknownst to Miniard, one of the tractor's tires was encroaching on the southbound lane.
Jeff Hendy, co-owner of Hendy, Inc., was also at the worksite. He stood on the shoulder of the road watching for traffic while Miniard positioned the tractor-trailer. After the tractor-trailer had been positioned, Hendy waved three cars in the northbound lane around the tractor and then moved to the rear of the trailer to watch Miniard offload the bulldozer. While Miniard was unloading the bulldozer, Loge, who was driving a 1994 Chevy Astro van owned by Freeman in the southbound lane on Carolina Trace, ran into the rear tire of the tractor-trailer's cab. As a result of the collision, Loge sustained injuries, and the van was damaged.
Loge and Freeman subsequently brought this action for personal injury and property damage against Miniard and Hendy, Inc. Following extensive discovery, a trial was had to a jury. The jury found that Loge was seventy-five percent negligent and Miniard and Hendy, Inc., were twenty-five percent negligent. A judgment entry in favor of Miniard and Hendy, Inc., was entered. Loge and Freeman now appeal, raising three assignments of error.
In their first assignment of error, Loge and Freeman contend that the trial court erred in admitting into evidence ten photographs taken by appellees' expert during his reconstruction of the accident scene. They argue that the photographs of the reconstructed events were so dissimilar from the actual events surrounding the accident that they prejudiced the outcome of the trial. We disagree.
The admissibility of photographs depicting an out-of-court experiment, such as the reconstruction of an accident scene, is a matter within the sound discretion of the trial court.[1] Such evidence is generally admissible if there is a substantial similarity between conditions existing at the time the experiment is conducted and those existing at the time of the occurrence in dispute.[2] Even if dissimilarities exist, the evidence is still admissible if these dissimilarities are not so marked as to confuse and mislead the jury. Such variances often go to the weight of the evidence rather than to its admissibility.[3]
One of the primary factual disputes at trial was the discernability of the tractor-trailer on the day of the accident. Loge and Freeman claimed that the tractor-trailer was not very discernible because it was parked in a "fish hook" or "J" position, with only the rear tire of the cab extending two to three feet in the southbound lane of Carolina Trace. Their expert witness, Thomas R. Huston, Ph.D., testified that the jackknifed position of the tractor-trailer had made it difficult for Loge to discern the encroaching tire and the tractor-trailer's rear hazard lights as she approached the tractor-trailer on the day of the accident. He further opined that Miniard's failure to provide adequate warnings to alert motorists, such as Loge, about the encroaching tire, had contributed to the accident.
Miniard and Hendy, Inc., on the other hand, argued that the jackknifed tractor-trailer, as well as the encroaching tire, had been reasonably discernible for at least several hundred feet, because the tractor-trailer's rear hazard lights were visible, and it was positioned on a clear unobstructed portion of the highway. They further argued that, had Loge been paying attention, she would have had time to swerve to the right and miss the encroaching tire, regardless of whether it extended one foot or three feet in the southbound lane.
In support of their version of events, Miniard and Hendy, Inc., called Daniel Aernie, a consulting engineer and president of a company specializing in accident reconstruction, to testify as to the discernability of the tractor-trailer. Aernie testified that, on July 21, 2000, after he had examined the police report, he met with Miniard and Hendy. He examined the tractor-trailer involved in the accident and took measurements of it. Around midday, Aernie traveled to the accident scene with Miniard and Hendy, where he took additional measurements of Carolina Trace.
Once Miniard and Hendy had positioned the tractor-trailer on Carolina Trace, Aernie used orange cones to mark fifty feet intervals from the accident scene out to a distance of about four hundred feet. He then drove southbound on Carolina Trace toward the tractor-trailer in an Astro van similar to the one Loge had driven on the date of the accident. He stopped the van at various cones along Carolina Trace and took photographs of the tractor-trailer through the windshield of the van.
Based on his experiment, Aernie testified at trial that the tractor trailer had been a reasonably discernible object, that Loge had had a clear, unobstructed view of the tractor-trailer and the encroaching tire for several hundred feet, that Lodge had had an adequate unobstructed portion of the southbound lane on which to proceed past the tractor's encroaching tire, and that Loge had had enough time and distance to turn the van's wheels to the right to avoid colliding with the encroaching tire. Aernie, therefore, opined that Loge's own inattention had caused and/or had contributed to the accident.
On cross-examination, Loge and Freeman's counsel questioned Aernie extensively about the tractor-trailer's placement in the recreated photographs, focusing on both the jackknifed position of the tractor-trailer and the encroaching tire. Thus, Loge and Freeman's counsel had ample opportunity to point out any dissimilarities in the photographs to the jury. Loge and Freeman were additionally able to present testimony by their own expert as to the discernability of the tractor-trailer.
Under these circumstances, we find that any dissimilarities between the photographs of the recreated accident scene and the actual scene went more toward the weight of the evidence than toward its admissibility.[4] As a result, we hold that the trial court acted within its discretion in admitting the photographs. We, therefore, overrule the first assignment of error.
In their second assignment of error, Loge and Freeman argue that the trial court erred in denying their motion for a directed verdict because the failure of Miniard and Hendy, Inc., to comply with specific safety rules and regulations was negligent as a matter of law. This challenge is untenable.
 Civ.R. 50(A)(4) governs the granting of a motion for a directed verdict on the evidence. It provides as follows:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party on that issue.
 When disposing of a motion for a directed verdict, the trial court may consider neither the weight of the evidence nor the credibility of the witnesses.[5]
Rather, the trial court is confronted solely with a question of law: whether sufficient material evidence was presented at trial on the issue to create a factual question for the jury.[6] If such material evidence was presented, then a directed verdict is inappropriate.[7] We review a motion for directed verdict de novo.[8]
In order to merit a directed verdict in their negligence action, Loge and Freeman must have produced sufficient evidence to demonstrate (1) that the defendants owed Loge a duty of care, (2) that the defendants breached that duty of care, and (3) that Loge suffered injury as a direct and proximate result of the defendants' breach of that duty of care.[9]
Loge and Freeman first argue that Miniard and Hendy, Inc., were negligent per se because they violated R.C. 4511.66, which prohibits the stopping, parking or leaving of a vehicle on the traveled portion of a highway. We disagree.
Under Ohio law, a violation of R.C. 4511.66 does not constitute negligence per se.[10] In Smiddy v. The Wedding Party, Inc., the Ohio Supreme Court found that, even though R.C. 4511.66 is a highway-safety statute, "it does not provide for an absolute prohibition against stopping, parking, or leaving a vehicle on the traveled portion of the highway. Rather, doing so is prohibited only if it is practicable to stop, park, or leave the vehicle off the traveled portion of the highway."[11] Thus, "the statute merely proscribes parking on the main traveled part of the highway when so parking would be unreasonable."[12]
So, negligence per se was not established by the mere fact that Miniard had parked the tractor-trailer on Carolina Trace in violation of R.C.4511.66.
Loge and Freeman next argue that, even if appellees were not negligentper se, they were still entitled to a directed verdict on the issue of Miniard and Hendy, Inc.,'s negligence because uncontroverted testimony was presented that Miniard could have parked the tractor-trailer off of the road. The record reveals, however, that, while Miniard and Hendy both agreed that Miniard could have parked the tractor-trailer off of Carolina Trace, it was not practicable for him to do so. Miniard and Hendy testified that the sharp slope along the berm of the highway would have made it dangerous for them to pull the tractor-trailer to the side of the road and unload the bulldozer. Thus, sufficient evidence was presented regarding the practicability of parking the tractor-trailer on Carolina Trace to create a factual issue for the jury's determination. As a result, we find that the trial court did not err by failing to direct a verdict in Loge and Freeman's favor on the issue of Miniard and Hendy, Inc.,'s negligence. Consequently, we overrule the second assignment of error.
In their final assignment of error, Loge and Freeman contend that the jury's verdict finding Loge to be more negligent than Miniard and Hendy, Inc., was against the manifest weight of the evidence. We disagree.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[13] When there are two reasonable views of the evidence, an appellate court cannot reweigh the evidence or substitute its judgment for that of the trial court.[14] Instead, the appellate court must defer to the trier of fact, who is in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."[15]
Based upon our review of the evidence, we conclude that there was competent credible evidence to support the jury's verdict that Loge's negligence in causing her injuries was greater than any negligence of Miniard and Hendy, Inc. We, therefore, overrule the third assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., Doan and Sundermann, JJ.
[1] See Vogel v. Wells (1991), 57 Ohio St.3d 91, 95, 566 N.E.2d 154,158.
[2] See St. Paul Fire Marine Ins. Co. v. Baltimore Ohio RR.Co. (1935), 129 Ohio St. 401, 195 N.E. 861, paragraph one of the syllabus.
[3] See St. Paul Fire Marine Ins. Co., supra at 406,195 N.E. at 864.
[4] See id. at 406, 195 N.E. at 864.
[5] See Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284,423 N.E.2d 467.
[6] See Malone v. Courtyard by Marriot (1996), 74 Ohio St.3d 440,445, 659 N.E.2d 1242, 1247.
[7] See id.
[8] See Titanium Industries v. S.E.A., Inc. (1997), 118 Ohio App.3d 39,691 N.E.2d 1087.
[9] See Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677,680, 693 N.E.2d 271, 274; Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142, 539 N.E.2d 614, 616.
[10] See Batesole v. Stratford (1974), 505 F.2d 804, 808-809 (holding that a violation of R.C. 4511.66 did not constitute negligence per se
because it expressed "a rule of conduct in general and abstract terms," and therefore, the common law test for negligence applied.)
[11] (1987), 30 Ohio St.3d 35, 37-38, 506 N.E.2d 212, 216 (emphasis in original).
[12] Lester v. John R. Jurgensen Co. (C.A.6, 1968), 400 F.2d 393, 396.
[13] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[14] See Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19,526 N.E.2d 1350, 1357.
[15] Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80,461 N.E.2d 1273, 1276.