**The STATE of Ohio, Appellee,**

**v.**

**ENGLISH, Appellant.**

[Cite as *State v. English* (1991), 77 Ohio App.3d 371.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–285.

Decided Sept. 26, 1991.

*Michael Miller*, Prosecuting Attorney, and *Katherine Press*, Assistant Prosecuting Attorney, for appellee.

*Steven Mathless,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Robert English, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated vehicular homicide in violation of R.C. 2903.06, with specification.

Early in the morning of December 7, 1989, defendant, his girlfriend Laura Dusenbery, and his friend Jeffrey Flowers, were traveling northbound on Rome–Hilliard Road in a 1984 Oldsmobile Omega belonging to Laura's mother ("Dusenbery car"). The Dusenbery car left the road, struck a culvert, and caught on fire. A police officer rescued Flowers and defendant before the car was consumed by the fire; Dusenbery's body was discovered inside the car after the fire was extinguished.

As a result of this accident, defendant was charged with aggravated vehicular homicide in violation of R.C. 2903.06, with specification, and was convicted thereof after trial to a jury. Defendant appeals therefrom, assigning the following errors:

"1. Appellant's conviction for aggravated vehicular homicide was against the manifest weight of the evidence when the State's proof of the identity of the driver was based entirely upon circumstantial evidence which was reconcilable with a reasonable theory of innocence, that the victim was the driver of the car involved in the accident.

"2. The trial court abused its discretion in ruling that an expert witness does not have to be qualified pursuant to Evid.R. 104 to give expert testimony if he is not asked to give opinion testimony, and in overruling defense objection to testimony by accident reconstruction witness after State proffered witness as a lay witness rather than expert witness, but then asked questions of witness requiring expert testimony over defense objection in which the witness gave answers in which he felt that he was only something over 51 percent right, and never said that he thought he was right to a reasonable degree of scientific certainty.

"3. The trial court erred in overruling defense objection to prosecutor's question as to whether there was physical evidence to support defense hypothetical questions asked of State's accident reconstruction witness, and in telling the prosecutor in front of the jury how to question the State's accident reconstruction witness because the trial court's ruling and statements may have been misinterpreted by the jury as opinion on part of the trial judge as to credibility of the expert witness or as an opinion on the judge's part as to facts of the case.

"4. The trial court abused its discretion in admitting an out of court misleading experiment which compared the driver's bucket seat position of the car involved in the accident to a bench seat position of a model car when the expert never measured the length of the bucket seat to see if it were the same length as a bench seat, used a male in his experiment to test the seating positions who was 5'11" tall while Appellant was only 5'8" tall, and used a female in his experiment who was 5'½" tall while the decedent was 4'11" tall, and never measured the inside leg of the decedent to see if she would have the same inside leg length as the female in his model.

"5. The trial court abused its discretion in allowing accident reconstruction witnesses and police officers to give a speed estimate from a yaw mark when the police did not know if the yaw mark came from the car involved in the accident.

"6. The trial court abused its discretion in allowing an accident reconstruction expert witnesses to state his opinion as to the identity of the driver of the car when the accident reconstruction witness' opinion was not based upon facts within his own personal knowledge or upon facts shown by other evidence.

"7. The trial court erred when it refused to give Appellant's requested jury instruction concerning opinion testimony of lay witnesses.

"8. The trial court abused its discretion when the court came [*sic*] Appellant the maximum sentence on his first felony conviction in part because of mere unsubstantiated allegations that were made against him that never even lead to charges being filed against him."

In his first assignment of error, defendant argues under *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, that his conviction is against the manifest weight of the evidence, since the state relied solely upon circumstantial evidence to prove the identity of the driver, and that evidence was reconcilable with a reasonable theory of defendant's innocence: the victim, rather than defendant, was the driver of the Dusenbery car.

The Supreme Court recently rejected the *Kulig* rule, which allowed the state to rely solely on circumstantial evidence to prove an essential element of the offense at issue only when that evidence is irreconcilable with any reasonable theory of defendant's innocence. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus, and at 272, 574 N.E.2d at 502, the Supreme Court determined that circumstantial evidence and direct evidence inherently possess the same probative value; thus the trier of fact need only "weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt."

Moreover, under *Jenks*, an appellate court reviewing the weight and sufficiency of evidence to support a criminal conviction must determine whether the evidence admitted at trial, if believed, "would convince the average mind of the defendant's guilt beyond a reasonable doubt"; whether, "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, paragraph two of the syllabus, and at 273, 574 N.E.2d at 503. Since defendant's manifest weight argument is limited to the jury's determination as to the identity of the driver, the issue before us is whether, viewing the evidence in favor of the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant was the driver of the Dusenbery car.

At trial, Officer James Miller testified that the engine compartment and the dashboard of the car were in flames when he arrived on the scene; that while discharging a fire extinguisher through the driver's window he observed no one in the driver's seat of the car; that, after rescuing Flowers from the left (driver's side) rear seat of the car, Miller observed defendant with the upper portion of his body extending outside the opened right (passenger side) rear door and the lower portion of his body inside the car; that he removed defendant from the car through the right rear door; and that Dusenbery's body was later found in the front passenger area of the car. Officer Michael Poole identified photographs he took of the car which showed the position of Dusenbery's body. Poole also testified that Dusenbery's feet were pinned in the wheel well by the collapse of the car, although he acknowledged that the ambulance crew was able to remove the body without cutting any metal.

The coroner, Dr. Keith Norton, testified that his autopsy of Dusenbery's body revealed that after impact, Dusenbery probably could have lived for no more than one minute and could have moved for no more than forty seconds; and that Dusenbery's body did not show signs of smoke inhalation from the fire. Norton also testified that Dusenbery's injuries were consistent with her having been the front-seat passenger.

Hal Dunham, a mechanical engineer, testified that the undamaged portion of the driver's seat adjustment mechanism of the Dusenbery car was locked in the seventh position from the front, out of ten possible positions. Dunham also testified to an out-of-court experiment he conducted involving a test of a 1984 Oldsmobile Omega equipped with a bench seat rather than bucket seats. His experiment showed that when the bench seat was placed in the seventh position from the front, a female test subject approximately the same height as Dusenbery could not operate fully the gas and brake pedals of the test car

while sitting fully back in the seat, but that a male test subject several inches taller than defendant could operate the pedals fully from that position.

Lieutenant Jack Holland and John Wiechel, the state's accident reconstruction experts, testified that the nearly frontal forces of the impact would not have laterally displaced Dusenbery's body from the driver's seat into the area where it was found, between the front passenger seat and the front passenger door. Both testified that defendant was the driver of the Dusenbery car to a reasonable degree of scientific certainty, based largely on the forces exerted during the collision and the position in which the occupants of the car were found after impact.

The foregoing evidence, if believed, was sufficient to convince a rational juror beyond a reasonable doubt that defendant was the driver of the car. *Jenks, supra;* see, also, *State v. Petro* (1947), 148 Ohio St. 473, 502, 36 O.O. 152, 163, 76 N.E.2d 355, 369.

As to defendant's evidence, Robert Yordy, defendant's accident reconstruction expert, also testified that he could account for no collision forces which would have laterally displaced Dusenbery's body from the driver's seat into the area between the front passenger seat and the front passenger door, although he was unable to form an opinion as to the identity of the driver. Jeffrey Flowers testified that he was unable to recall the circumstances surrounding the accident at the time of trial, although he made a statement to police shortly after the accident indicating that Dusenbery was the driver. Defendant testified that Dusenbery was the driver and defendant was the front-seat passenger; that Dusenbery was located to defendant's left after the impact; that Officer Miller removed defendant from the front passenger door; and that Dusenbery's body was never on top of defendant's body nor defendant's body on top of Dusenbery's body.

Given that evidence, defendant's theory that Dusenbery was the driver requires that either Dusenbery herself, or some force other than that of the collision, caused Dusenbery's body to move from the driver's seat to the front passenger area, since even defendant's expert witness could account for no collision forces which would have laterally displaced Dusenbery's body to such an extent. The jury reasonably could have concluded that Dusenbery did not move herself into the front passenger area before Officer Miller removed defendant from the car, given defendant's testimony not only that Officer Miller found him lying outside the front passenger door of the car with his legs, from his knees to his toes, still inside the car, but also that at no time was defendant's body on top of Dusenbery's. The jury also reasonably could have concluded that Dusenbery did not move into the front passenger area after Officer Miller removed defendant from the car, based on the severity of

Dusenbery's injuries, the position of her body, the time elapsed since impact, and the lack of evidence that Dusenbery inhaled smoke from the fire.

The only non-collision force identified which arguably could have moved Dusenbery's body into the front passenger area was the force of the water from the fire hose used to extinguish the fire. However, Fire Lieutenant David Long testified that the fire hoses directed to the fire in the car interior were applied only through the passenger-side windows; and Wiechel testified that, to the extent the water pressure from the fire hoses was sufficient to move objects, water applied from hoses directed through the passenger-side windows would have tended to push objects toward the driver's side of the car. Moreover, Wiechel testified that the plastic melting from the dashboard as a result of the fire dripped straight down; that the pattern of the melting plastic was not disturbed by the spray from the fire hoses; and that a spray force having no effect on the dripping plastic was unlikely to have any effect on a body weighing one hundred pounds.

Since the state's evidence was sufficient to convince a rational juror beyond a reasonable doubt that defendant was the driver of the Dusenbery car, we overrule defendant's first assignment of error.

We consider defendant's second and seventh assignments of error together, as both involve challenges to the trial court's discretion in admitting Hal Dunham's testimony and in instructing the jury regarding such testimony.

■ Defendant first asserts that the trial court abused its discretion in ruling that an expert witness who is not asked to give opinion testimony need not be qualified as an expert witness pursuant to Evid.R. 104, because Dunham testified to matters involving scientific, technical, or other specialized knowledge not within the common knowledge of laymen. The state responds that Dunham testified only to observations within the common knowledge of laymen, and therefore need not have been qualified as an expert witness. Defendant also asserts that the trial court abused its discretion in failing to instruct the jury on opinion testimony by lay witnesses pursuant to defendant's request, because Dunham, who was not qualified as an expert, testified to his opinion; the state responds that no instruction on lay opinions was required, because Dunham testified to his observations rather than to his opinion.

At trial, Dunham testified to his observations concerning (1) the Dusenbery car, particularly the driver's seat adjustment mechanism; (2) the accident scene; (3) a comparison of the Dusenbery car to a test 1984 Oldsmobile Omega equipped with a bench seat; and (4) an out-of-court experiment Dunham conducted to determine the ability of test subjects to operate the gas and brake pedals from various seat positions in the test car. To the extent

that Dunham testified only to his observations, the trial court did not abuse its discretion in permitting Dunham to testify without first qualifying him as an expert, and in refusing to instruct the jury regarding lay opinions.

■ In addition, Dunham testified to the existence of recall or other pre-impact defects in the car's components; such testimony involved both Dunham's observations and his opinion based upon those observations. However, Dunham's testimony regarding pre-impact defects is better characterized as the opinion of an expert witness rather than the opinion of a lay witness, because the subject matter thereof is beyond the common knowledge of laymen. See Evid.R. 702; *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 40 O.O.2d 87, 228 N.E.2d 304, paragraph one of the syllabus. To the extent that the trial court abused its discretion in permitting Dunham to testify to the existence of any pre-impact defects without first qualifying Dunham as an expert, or in refusing to instruct the jury regarding lay opinion testimony, we find no prejudice to defendant, as testimony regarding such defects was not relevant to proof of the identity of the driver. *State v. Hymore* (1967), 9 Ohio St.2d 122, 38 O.O.2d 298, 224 N.E.2d 126, certiorari denied (1968), 390 U.S. 1024, 88 S.Ct. 1409, 20 L.Ed.2d 281; see, also, *State v. Withers* (1975), 44 Ohio St.2d 53, 73 O.O.2d 280, 337 N.E.2d 780, certiorari denied (1976), 424 U.S. 975, 96 S.Ct. 1480, 47 L.Ed.2d 745.

■ Defendant further asserts that the trial court erred in overruling defense objections to Dunham's testimony about his observations of the driver's seat adjustment mechanism, because Dunham failed to testify that such observations were correct to a reasonable degree of scientific certainty. Dunham testified, in essence, that his observation that the latch of the driver's seat adjustment mechanism was located in the seventh notch was something over fifty-one percent accurate. However, Dunham was not required to express any particular degree of confidence in his response, since he was testifying to his observations regarding the driver's seat adjustment mechanism, and not to his opinion. Accordingly, the trial court did not err in overruling defense objections to the foregoing testimony.

We overrule defendant's second and seventh assignments of error.

■ In his third assignment of error, defendant first asserts that the trial court erred in overruling defense objections to the prosecutor's questions to the state's expert witness on redirect regarding the existence of physical evidence to support the hypothetical questions posed by defense counsel, and that the jury could interpret the foregoing ruling as an expression of the trial court's opinion that no evidence existed to support the hypothetical scenarios posed by the defense.

During cross-examination of Wiechel, defense counsel inquired whether Wiechel's opinion as to the identity of the driver would change if Wiechel assumed the existence of particular facts. On redirect, the prosecutor then asked whether defense counsel had provided Wiechel with any physical evidence which Wiechel found to be beneficial in forming his opinion regarding the identity of the driver. Defense counsel objected to the foregoing question on the basis that evidence existed to support the hypothetical scenarios posed to Wiechel on cross-examination; the trial court overruled the objection, and Wiechel responded that defense counsel had provided him with no such physical evidence.

■ Although the prosecutor's question arguably was confusing, it did not ask whether evidence existed to support defendant's hypothetical questions; rather, the question asked (1) whether defense counsel had provided evidence supporting defendant's hypothetical questions to Wiechel, and (2) whether Wiechel found any such evidence to be helpful in forming his opinion. Moreover, we cannot reasonably characterize the trial court's overruling of defendant's objection, without any comment thereon, as an expression of the court's opinion as to the facts of the case. Cf. *State v. Kay* (1967), 12 Ohio App.2d 38, 46–49, 41 O.O.2d 91, 96–98, 230 N.E.2d 652, 658–660 (trial court's comments regarding the credibility of witnesses invaded province of jury and violated defendant's right to fair and impartial trial).

■ Defendant further asserts that the trial court erred by assisting the prosecutor in formulating questions posed to the state's expert witness, in order to elicit the expert's opinion to a reasonable degree of scientific certainty. Specifically, when defendant objected to the form of questions seeking to elicit Wiechel's opinion regarding the identity of the driver, the court responded by suggesting acceptable forms for such questions.

■ An expert's opinion generally is competent only if the expert holds that opinion to a reasonable degree of scientific certainty. *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 714, certiorari denied (1990), 494 U.S. 1090, 110 S.Ct. 1834, 108 L.Ed.2d 962. While the trial court's suggestions may have assisted the prosecutor in eliciting competent opinion testimony from Wiechel, the trial court properly may interrogate a witness if the court confines its questions to relevant matters and avoids even the appearance of partiality to either side. Evid.R. 614(B); *Kay, supra*, 12 Ohio App.2d at 48–49, 41 O.O.2d at 97–98, 230 N.E.2d at 659–660. Since Wiechel's expert opinion as to the identity of the driver was unquestionably relevant, we need determine only whether the court's suggestions showed even the appearance of partiality.

Initially we note that the prosecutor originally phrased the question properly, but apparently due to defendant's objections, reasserted the question in an improper form. Defendant then objected to the form of the question and the trial court offered suggestions as to phrasing. Whether or not properly given, the trial court's suggestions reveal no comment upon the expert's credibility, *Kay, supra,* no attempt to influence the expert's response, *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 7 OBR 124, 454 N.E.2d 541, and no attempt to raise an issue not raised by the parties. *Bates v. Bill Swad Leasing Co.* (1984), 17 Ohio App.3d 153, 17 OBR 253, 477 N.E.2d 1224. At most, the trial court's question could be deemed to have an appearance of impartiality only in the court's willingness to assist one party in properly phrasing a question. Indeed, defendant may have benefitted from the question had the expert been unable to testify that he held his opinion to a reasonable degree of scientific certainty.

In the final analysis, although defendant objected to the form of the prosecutor's question prior to the trial court's rephrasing it, defendant did not object to the court's intervention. Nor did defendant request any curative instruction. Given the lack of objection, the nature of the trial court's intervention, and the trial court's instruction to the jury at the conclusion of the trial to disregard any action of the trial court indicating the court's view of any fact or issue, we find that the trial court's assistance to the prosecutor, while not recommended, does not rise to the level of reversible error. Cf. *State v. Shelton* (Dec. 28, 1988), Hamilton App. No. C–870834, unreported. Defendant's third assignment of error is overruled.

██ Defendant's fourth assignment of error asserts that the state's testimony about the results of an out-of-court experiment was misleading because the test car and the test subjects were not substantially similar to the car and the subjects involved in the accident, and that the trial court therefore abused its discretion in admitting said testimony. The state responds that dissimilarities between the conditions of the experiment and the accident affect the weight rather than the admissibility of the testimony.

██ Evidence of an out-of-court experiment generally is admissible when substantial similarity exists between conditions at the time the experiment is made and those at the time of the occurrence in dispute. *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio Rd. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, syllabus. However, the trial court abuses its discretion in admitting evidence of an out-of-court experiment when the difference between the conditions of the experiment and those of the occurrence in dispute are so marked as to confuse and mislead the jury. *Id.;* see, also, *Tritt v. Judd's*

*Moving & Storage, Inc.* (1990), 62 Ohio App.3d 206, 214, 574 N.E.2d 1178, 1184.

Applying the foregoing parameters to the facts herein, Dunham's out-of-court experiment examined the ability of test subjects to operate the gas and brake pedals from various driver's seat positions in a 1984 Oldsmobile Omega. The conditions of the experiment differed from the conditions of the accident to the extent that the test car was equipped with a bench seat rather than bucket seats, with no evidence of dimensional similarities in the seats themselves or in the distance from the seats to the pedals in the two cars. Further, the height of the test subjects was not matched precisely to the height of the front-seat occupants of the Dusenbery car: the male test subject was three inches taller than defendant.

Given the presence of such marked dissimilarities, we question whether the trial court properly admitted evidence of the foregoing experiment. However, even if the trial court abused its discretion in admitting such evidence, we find no prejudice to defendant, given the nature of Dunham's testimony, the substantial evidence regarding the location in which the Dusenbery car's occupants were found after impact, the nature of the damage to the car, the nature of the injuries sustained by defendant and Dusenbery, Officer Poole's testimony that Dusenbery's feet were pinned by the collapse of the car, the testimony of the state's expert witnesses regarding the collision forces, and defendant's testimony that his body was never on top of Dusenbery's body. *Hymore, supra;* see, also, *Withers, supra.*

Accordingly, we overrule defendant's fourth assignment of error.

Defendant's fifth assignment of error asserts that the trial court abused its discretion in allowing Officer Robert Parkey and Lieutenant Holland to estimate the speed of the car based on a yaw mark on the roadway near the accident scene, as the state did not establish beyond a reasonable doubt that the Dusenbery car created the yaw mark. Defendant's objections to the foregoing testimony arguably raise two issues: the propriety of the state's hypothetical questions, and the state's burden of proof of facts upon which an expert witness relies.

When the parties dispute the facts on which the expert may base his opinion, either party generally may pose hypothetical questions asking the expert to assume facts which that party claims are shown by the evidence. *Haas v. Kundtz* (1916), 94 Ohio St. 238, 243–244, 113 N.E. 826, 827–828. The state's hypothetical questions about the estimated speed of the car asked Parkey and Holland to assume a fact to which a state witness testified: that the Dusenbery car created the yaw mark.

However, defendant also argues that *State v. Brown* (1982), 7 Ohio App.3d 113, 115, 7 OBR 145, 147, 454 N.E.2d 596, 599, requires not only that the facts be in evidence, but that the state prove beyond a reasonable doubt every fact upon which its experts relied. Specifically, defendant argues that although Parkey and Holland relied upon a yaw mark in estimating the speed of the Dusenbery car, and Parkey testified that the front tires of the Dusenbery car and the yaw mark had the same number of ribs, including his statement that a "continuing path of loss of control" extended from the yaw mark to the final resting position of the car, his testimony did not prove beyond a reasonable doubt that the Dusenbery car created the yaw mark. Hence, defendant argues the trial court erred in permitting Parkey and Holland to testify to the speed of the Dusenbery car.

Due process requires the state to prove beyond a reasonable doubt "every fact necessary to constitute the crime" with which defendant is charged. *Washington Court House v. McStowe* (1976), 45 Ohio St.2d 228, 229, 74 O.O.2d 333, 334, 343 N.E.2d 109, 110 (quoting *In re Winship* [1970], 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375). However, contrary to defendant's assertion that *Winship* requires proof beyond a reasonable doubt of every fact which the state's expert witness considered in forming his opinion, the state must meet the foregoing burden of proof only as to each element of the offense with which defendant is charged. *State v. Spikes* (1981), 67 Ohio St.2d 405, 413, 21 O.O.3d 254, 259, 423 N.E.2d 1122, 1129.

Under *Winship*, when the credibility of an expert witness's opinion necessarily depends upon the existence of a disputed or assumed fact, and the opinion of that expert constitutes the state's sole proof of an element of the offense, the state must prove beyond a reasonable doubt the assumed or disputed fact upon which the expert's opinion depends. However, when the credibility of an expert witness's opinion does not necessarily depend upon the existence of a disputed or assumed fact, or when the state has presented evidence of an element of the offense other than the opinion of an expert witness which necessarily depends upon a disputed or assumed fact, the state need not prove the disputed or assumed fact beyond a reasonable doubt. Due process requires only that the jury consider all of the evidence, *Haas, supra*, in order to determine the weight to be given to that evidence and the credibility of witnesses, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, and find that the state has proved beyond a reasonable doubt the element of the offense at issue.

▮▮▮▮ Applying the foregoing parameters to the facts herein, Holland's estimate of the speed of the car did not necessarily depend upon whether the Dusenbery car created the yaw mark, because Holland testified that he was also able to estimate the speed of the car using a method which did not rely on

the yaw mark. Thus, the trial court's admission of Holland's testimony did not violate due process. Unlike Holland's testimony, Parkey's estimate of the speed of the car necessarily depended on whether the Dusenbery car created the yaw mark. However, admission of such testimony did not violate due process even if the state failed to prove the disputed fact beyond a reasonable doubt, because the state's proof of the identity of the driver did not consist solely of Parkey's testimony.

Having determined that the state's hypothetical questions were proper, and that the trial court did not err in admitting Parkey's and Holland's testimony, we overrule defendant's fifth assignment of error.

■ Defendant's sixth assignment of error asserts that the trial court abused its discretion in allowing the state's expert witness, Wiechel, to render an opinion regarding the identity of the driver when that opinion was not based upon facts within the witness's personal knowledge or established by other evidence, but instead was based upon assumptions unsupported by any evidence.

The facts upon which an expert relies must be those perceived by him or admitted in evidence at trial. Evid.R. 703; *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526, syllabus. Wiechel had no personal knowledge of the events which occurred at the accident scene; thus, he properly could base his opinions only upon evidence admitted at trial.

On direct examination, Wiechel outlined the facts upon which he relied in concluding that defendant was the driver. Although Wiechel's account of such facts and the facts admitted into evidence do not agree in every detail, we find no substantial discrepancies therein. On cross-examination, however, Wiechel's account of the facts upon which he relied diverges significantly from the facts in evidence, particularly regarding the extent of the flames inside the vehicle at the time Officer Miller arrived on the scene. In addition, Wiechel testified on cross-examination that his opinion as to the identity of the driver was based, in part, upon the assumption that the severity of Dusenbery's injuries precluded her from moving from the driver's seat to the front passenger area after impact; and that assumption is arguably inconsistent with Dr. Norton's subsequent testimony that Dusenbery could have moved for up to forty seconds after impact.

Finding no substantial discrepancies between the facts on which Wiechel's direct testimony relied and the facts admitted into evidence, we cannot say that the facts on which Wiechel relied were unsupported by any evidence; thus any discrepancies therein go to the weight of Wiechel's testimony rather than its admissibility under Evid.R. 703. See *Price v. Daugherty* (1982), 5

Ohio App.3d 157, 159, 5 OBR 339, 340, 450 N.E.2d 296, 299. Moreover, the discrepancies between Wiechel's account of the facts on cross-examination and the facts admitted into evidence affect the weight of Wiechel's testimony, but do not warrant exclusion of this testimony on direct examination. *Id.*

We overrule defendant's sixth assignment of error.

Defendant's eighth assignment of error asserts that the trial court abused its discretion in sentencing defendant to the maximum sentence on his first felony conviction. Specifically, defendant contends that the trial court based this sentence, in part, on allegations that defendant was involved in several incidents of domestic violence which did not culminate in the filing of any charges.

The presentence report apparently included information that the Hilliard police had been dispatched to defendant's residence on several occasions in response to domestic violence complaints involving defendant, but that defendant's wife had refused to file charges arising therefrom. Defendant's wife, in an unsworn statement at the sentencing hearing, acknowledged that such incidents occurred, but attributed the incidents to the stress of trial events.

In sentencing, the trial court may consider information which would have been inadmissible at trial, *State v. Cassidy* (1984), 21 Ohio App.3d 100, 101, 21 OBR 107, 108, 487 N.E.2d 322, 323, including information regarding other arrests, regardless of whether convictions resulted. *State v. Burton* (1977), 52 Ohio St.2d 21, 23, 6 O.O.3d 84, 85, 368 N.E.2d 297, 298; *Maple Hts. v. Dickard* (1986), 31 Ohio App.3d 68, 71, 31 OBR 108, 111, 508 N.E.2d 994, 998. See, also, *State v. Tutt* (1988), 44 Ohio App.3d 138, 139, 541 N.E.2d 1090, 1091. Moreover, R.C. 2929.12 requires the trial court to consider particular factors, including the "history, character, and condition of the offender and his need for correctional or rehabilitative treatment." We therefore find no abuse of discretion in the trial court's consideration of defendant's relationship with his family in determining defendant's sentence, particularly when defendant's statement regarding the presence of mitigating factors characterized that relationship as one involving mutual support.

Having overruled defendant's eight assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

JOHN C. YOUNG and TYACK, JJ., concur.