Defendant-appellant Fernando Lopez ("defendant") appeals the jury verdict finding him guilty of three counts of rape in violation of R.C. 2907.02(A)(1)(b) and three counts of gross sexual imposition in violation of R.C. 2907.05. Defendant claims: (1) the plaintiff-appellee State of Ohio created material prejudice in the minds of the jury by making references to unsubstantiated evidence and (2) the jury verdict was unsupported by the evidence.
A review of the hearing transcript reveals several witnesses testified on behalf of the state. The first witness to testify was Yolanda Villegas. She stated defendant lived with her, her grandmother, her two sisters, and her niece ("victim") and nephew. She said her grandmother and defendant were living together as boyfriend and girlfriend. Regarding the sleeping arrangements, Villegas testified grandmother and defendant slept in a single bed in the attic together with her niece and nephew who had their own beds. Villegas stated she discovered her nephew, the victim, and cousins were playing a "humping" game. She testified she gathered the children together and chastised them for playing this game. She also grounded the victim and nephew for two weeks. Villegas said she proceeded to take the children to the store to buy them candy when the victim began crying and shaking. Villegas testified the victim described what defendant did to her and stated it occurred on the bed in the attic. The victim also informed Villegas that these incidents did not subside until defendant was kicked out of the house. Villegas said a family discussion ensued and it was decided they should contact a social worker, Maria Mezera.
Mezera testified next and stated she was a counselor for a group called the Economic Opportunity of Greater Cleveland. She said a family member called and told her about the situation. Mezera testified she called Children's Services and then the Alpha Clinic at Metro Hospital which deals with molested children. She stated she took the victim in for an initial exam and back again for a second appointment to be interviewed by a social worker.
The third witness to testify was Dr. Feingold, an expert in pediatrics, who is in charge of the Alpha Clinic. Feingold stated he saw the victim on September 8, 1997. He referred to his notes from that examination and repeated the victim told him "I hate Fernando," "he molested me," "he kissed me on the mouth. He sticked his privacy in my privacy," "[h]e sticked his tongue in my privacy." When questioned about the physical exam he performed on the victim, Feingold related the exam did not reveal any evidence that intercourse occurred. He qualified this answer by saying it is possible to insert something small enough into the vagina so as not to tear the hymen. Plus, if the penetrating object is not fully inserted there may be no signs of abuse. Feingold testified when a child is abused by a friend or family member rather than a stranger the abuse tends to be less violent. He stated further that the lack of physical evidence does not preclude sexual abuse. On cross-examination, Feingold conceded that in a case with no physical abuse the examiner only has the interview and medical history to rely on, which is basically just an opinion. He also was unable to list any specific studies which concluded sexual abuse can occur even where there is no physical evidence.
The victim was the fourth witness to testify. She stated she was a nine-year-old third grader and that the abuse occurred when she was eight. The victim started by saying her grandmother and defendant fought a lot and that when this happened her grandmother slept on the couch downstairs. After one such fight, defendant touched her private parts with his finger. The victim testified that defendant would come over to her bed and bring her back to his bed. She said defendant touched her private parts and told her not to tell anyone or else she would get a "whooping." She also said defendant covered her mouth. When questioned specifically about the incidents, the victim stated defendant would take her clothes off by pulling them down to her knees. She would be on top of him and he would be lying on the bed on his back. She testified when he put his finger in her it "hurted" and he did this "lots of times." She said he did it more than five or six times but less than ten. The victim said "he put his private part in my private part." That it hurt and felt wet and that defendant also put his tongue in her private part and kissed her on the mouth and put his tongue in her mouth. The victim then stated defendant did this ten times and she only told her brother and Yolanda about these incidents. She concluded by saying defendant drank beer when he did this to her.
The next witness to testify for the state was Carla Calhoun who worked for the Department of Children and Family Services. She interviewed the victim and said she read her a story called "Red Flag, Green Flag" which concerned good and bad touching. Calhoun also said she used anatomical dolls during the interview. Calhoun stated the victim circled the vagina area, the mouth, and buttocks as parts that had been touched. Calhoun testified the victim informed her:
 "that she had been touched on her privacy by his hand and that he had put his privacy against her privacy, and I asked her how did it feel when he put his privacy against her privacy. She said that, I believe she said that it hurt and it burned when she went to the bathroom. I asked did she feel anything. She said it felt wet. I asked her did she see it. She said no, but it felt wet."
Calhoun said further that defendant told the victim she would be whipped if she told anyone. Lastly, Calhoun stated the victim told her, defendant touched her ten times but later in the interview she counted to ten and asked the victim how many times and the victim stopped her at ten.
The seventh witness to testify was the victim's grandmother, Cecelia Rodriguez. Rodriguez stated she and the defendant fought and had arguments all the time. She said when this occurred she would leave her bed in the attic and go downstairs and sleep on the couch. She testified she argued with defendant because of his drinking problem and that he drank every day, 3-4 forty-ounce bottles. Rodriguez stated she kicked defendant out of the house because of his drinking problem.
Defendant did not testify on his own behalf and did not present any witness, so at the conclusion of the state's case the jury retired for deliberations. Upon returning, the jury found defendant guilty of three counts of rape and three counts of gross sexual imposition but not guilty of two counts of rape and two counts of gross sexual imposition. Subsequently, defendant was sentenced to a life sentence on each of the three counts of rape and three years on each count of sexual imposition to be served concurrently but consecutive to the life sentences.
Defendant timely filed his notice of appeal and now presents two assignments of error. In his first assignment of error, defendant states as follows:
 REPEATED BUT UNFOUNDED REFERENCES DURING THE TRIAL TO THE MEDICAL UNDETECTABILITY OF MANY CHILD ABUSE CASES CREATED UNFAIR, MATERIAL PREJUDICE IN THE MINDS OF THE JURY WHICH ALLOWED THEM TO FIND THE DEFENDANT GUILTY.
Defendant complains the trial was materially prejudiced and he should be granted a new trial because the state made references to unsubstantiated medical evidence that in most child sex abuse cases there will be no signs of abuse. In support of this argument, defendant refers to the victim's testimony where she stated he put his private part into her private part and pulled her all the way down on him and it hurt. Defendant claims this testimony reveals that more than just gentle "red flag" caresses or oral sex abuse occurred but the state could not produce any evidence to corroborate this testimony, so it used Dr. Feingold's unsubstantiated medical testimony which was prejudicial. Specifically, defendant cites to the state's closing where the prosecutor stated "[Dr. Feingold] explained in 80 percent of the cases there just will be no signs of abuse, and he gave that opinion to the highest degree of medical certainty he could."
The state counter-argues there are many instances when physical abuse is not detected in sexual abuse cases: (1) when the abuse is non-violent, (2) time delay between the assault and examination, (3) the fact that a minor female's genitalia heals rapidly, and (4) lack of vaginal penetration. Moreover, the state maintains defendant had every opportunity to cross-examine Dr. Feingold about the unsubstantiated testimony and he could have called his own medical expert to refute Feingold's testimony. In addition, the state contends the jury was free to disregard Dr. Feingold's testimony if they thought his inability to cite to articles or medical journals negated his expert opinion. Lastly, the state cites to the trial transcript and cites to Dr. Feingold's testimony (p. 322) where he states in 80% of children's sexual abuse cases, evidence of physical abuse is not present. Therefore, the state concludes defendant was not materially prejudiced.
The issue is whether the unsubstantiated expert testimony of Dr. Feingold regarding the absence of physical evidence of sexual abuse of the victim materially prejudiced defendant. In State v.English(1991), 77 Ohio App.3d 371, 384, the court discussed the proof of facts upon which an expert relies. The court, citing Inre Winship(1970), 397 U.S. 358, 364, stated:
 "Under Winship, when the credibility of an expert witness's opinion necessarily depends upon the existence of a disputed or assumed fact, and the opinion of that expert constitutes the state's sole proof of an element of the offense, the state must prove beyond a reasonable doubt the assumed or disputed fact upon which the expert's opinion depends. However, when the credibility of an experts witness's opinion does not necessarily depend upon the existence of a disputed or assumed fact, or when the state has presented evidence of an element of the offense other than the opinion of an expert witness which necessarily depends upon a disputed or assumed fact, the state need not prove the disputed or assumed fact beyond a reasonable doubt. Due process requires only that the jury consider all of the evidence, Hass, supra, in order to determine the weight to be given to that evidence and the credibility of witnesses, State v. DeHass(1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, and find that the state has proved [602 N.E.2d 664] beyond a reasonable doubt the element of the offense at issue."
In the present case, the victim's aunt, a counselor, the victim, a social worker, a police detective, and the victim's grandmother collectively provided testimony regarding the elements of rape and gross sexual imposition. Therefore, according to English the state did not have to prove beyond a reasonable doubt the assertions made by Dr. Feingold that in many cases of sexually abused children there is often a lack of physical evidence of the abuse. It was within the province of the jury to rely on this testimony or disregard it pursuant to the weight they afforded it and their determination of the credibility of the witnesses. DeHass, supra. Accordingly, defendant's argument is not well-taken and his first assignment of error is overruled.
Defendant's second assignment of error states as follows:
 THE CONCLUSION OF THE JURY, IN FINDING THE DEFENDANT GUILTY ON THE FIRST THREE COUNTS OF EACH OFFENSE WAS IRRATIONAL, NOT SUPPORTED BY THE EVIDENCE WHICH THEY CONSIDERED, AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant argues the there was minimal evidence to support the guilty verdicts. He complains all the jury had to rely on was the inconsistent statements of one little girl and the hearsay testimony of six adult witnesses. Furthermore, defendant claims in reality there was no consistency beyond general assertions of sexual abuse involving touching, oral sex and general sex between any of the two witnesses. Plus, defendant contends there was bias against him at the time the victim made her allegations because of the animosity towards him by the family members, because he took the TV with him upon moving out, and because of "the bad blood" between [the victim's] grandmother and him. Regarding the specific testimony of the witnesses, defendant argues the police detective, social worker, and the grandmother provided no relevant testimony. Carla Calhoun only had the victim draw pictures regarding the alleged abuse and she circled the buttocks area which was never later corroborated by any other witnesses including the victim herself. Also, defendant complains Dr. Feingold did not find any physical evidence to support the charges and he stated he did not know "whether the history [the victim gave him] was true or false, I cannot tell." Lastly, defendant claims the testimony was inconsistent regarding the timing and frequency of the abuse. The victim stated she was molested anywhere from three to ten times, she was inconsistent regarding whether defendant removed his pants, and she testified ambiguously about when the abuse activity occurred.
The state maintains the testimony was very consistent regarding the actual abuses that occurred. The victim told her aunt the abuse took place for a month, she told the social worker the abuse happened ten times, and she testified it occurred more than five but less than ten times. Thus, the state claims there is no real inconsistency with this testimony. Moreover, the state argues the victim's testimony was consistent about defendant putting "his privacy in her privacy" and that defendant hurt her and put his tongue in her vagina. Regarding the dates of the abuse, the state claims the victim testified she was eight years old at the time of the abuse and that she was able to correlate domestic incidents that occurred simultaneously with the abuse. As a result, the lack of specificity regarding the timing should not be fatal to the guilty charges.
It is well-settled law that a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. State v. Seiber
(1990), 56 Ohio St.3d 4, 13. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, said conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow(1995), 103 Ohio App.3d 368,370-371. This is a difficult standard to meet, and we are not persuaded it was met in the instant case.
Defendant was found guilty of violating R.C. 2907.05, "Gross sexual imposition" which states:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
He was also found guilty of violating R.C. 2907.02, "Rape" which states:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
A detailed review of the facts reveals the victim's testimony about the sexual abuse was consistent throughout this entire case. She disclosed the same facts about the occurrences to her aunt, the social worker, Dr. Feingold, and at trial while testifying. The victim informed each witness and said at trial that defendant placed his penis inside her vagina, kissed her mouth and vagina, and put his tongue in her vagina. In addition, she was consistent by stating she was eight years old when the abuse occurred and then related several domestic instances from that time frame as reference points. Lastly, the victim's trial testimony and the testimony given by her aunt and the social worker was consistent as to the number of times the victim was abused, which was more than five but less than ten times.
Based on the foregoing, we believe there was substantial evidence upon which all the essential elements of rape and gross sexual imposition have been proven beyond a reasonable doubt. Thus, defendant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., MICHAEL J. CORRIGAN, J. CONCUR.
 ___________________________________ JUDGE JOHN T. PATTON
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).