OPINION
Appellant, Jeffrey J. Burns, appeals from the judgment entered by the Lake County Court of Common Pleas. Burns was convicted of two counts of breaking and entering.
On October 26, 1999, a True Value Hardware store in Concord Township ("True Value") was broken into. The intruder used a large rock to break the glass on the front door to gain access to the store. Once inside, the intruder took $600 to $700 from the store's cash register. After the break-in, the glass in the door was replaced.
The following day, True Value was again broken into. The glass in the front door was broken. The intruder took about $60 and a pair of jeans. A poor quality surveillance videotape showed that the intruder appeared to be a black male wearing a camouflage jacket.
On October 28, 1999, employees of the 84 Lumber Company in Concord Township reported that the store had been broken into. An individual used a large board to break the glass in the front door of the store. Nothing was taken from the store, but boxes inside the store were moved, and merchandise on some of the racks was in disarray.
The Lake County Sheriff's Department checked with neighboring jurisdictions to see if they too were experiencing break-ins. The Geauga County Sheriff's Department informed them that a Dairy Mart convenience store had been broken into on October 29, 1999. A large object was thrown through the glass of the front door of the Dairy Mart. The surveillance video showed that the individual was a black male wearing a camouflage jacket.
The Euclid Police had also been experiencing a number of break-ins. On the night of November 12, 1999, Patrolman Thomas Arizza of the Euclid Police Department noticed Burns wearing a camouflage jacket holding a large piece of concrete. Burns was arrested.
The Euclid Police Department provided Lake County with Burns' fingerprints, and his fingerprint was found on the glass taken from the scene at 84 Lumber. Burns was indicted on two counts of breaking and entering, one for the incident at 84 Lumber and one for the second incident at True Value.
Burns raises four assignments of error. The first assignment of error is:
 "The trial court erred to the prejudice of the defendant-appellant in violation of his constitutional rights to due process and fair trial when it allowed in evidence of prior bad acts in violation of Evid.R. 404(B), 403(A) and R.C. 2945.59."
Burns asserts that the trial court erred by admitting evidence about the incidents in Geauga County and Euclid. We agree.
The trial court allowed Detective Chet McNabb of the Geauga County Sheriff's Department to testify, over defense counsel's objection, about the Dairy Mart incident. He testified that the intruder was a black male, wearing a camouflage jacket, had dread lock curls in his hair, and had a beard that had some graying hair in it. The detective testified that he entered an all points bulletin into the Ohio LEADS system, which included: a description of the suspect, the method of entry, and a still photograph taken from the surveillance camera. Through this process he was provided with Burns' name. The still photograph and report were admitted into evidence.
Burns objects to this testimony and evidence based on Evid.R. 404(B), which pertains to other crimes, wrongs or acts, and states:
 "Evidence of other crimes, wrongs, or acts are not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Similarly, R.C. 2945.59 provides:
 "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
Evidence of other acts under R.C. 2945.59 and Evid.R. 404(B) is to be construed against admissibility.[1] This is because "[t]he average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime."[2]
"Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[3] Under R.C.2945.59, the state does not need to establish proof beyond a reasonable doubt that the defendant committed the other act.[4] Rather, the state need only offer substantial evidence that the defendant committed the other alleged act.[5]
In Carter, two eyewitnesses to the other act testified that the person who committed the other act wore a black trench coat, had a scar on his face, and had a black gun. Although neither of the witnesses made a positive in-court identification, they both picked the defendant out of a line-up and identified him as the person who committed the other act. The court held this was substantial evidence that the other act was committed by the defendant.[6]
In State v. Jamison, the Supreme Court of Ohio held that there was substantial evidence that the defendant committed other acts where there were "eyewitnesses, fingerprints and other identification."[7] In regards to one of the robberies, there was also a photograph of the defendant committing the act, and he had marked money from that restaurant when he was arrested.[8]
By contrast, in this case the only evidence presented that Burns committed the break-in in Geauga County was a still photograph taken from a surveillance videotape. The black and white picture shows a black male wearing a camouflage jacket. When Detective McNabb was asked about the all points bulletin, the following colloquy occurred:
 "Q: Now as a result of your viewing of the tape and any preliminary reports, what, if any, action did you take?
 "A: Shortly after we were able to, what we did I made still photographs of the, from the video tape along with my commander we entered into the Ohio LEAD system an all points bulletin with the description of the male and method of entry into the building and was requesting information from any other departments that may have also had similar incidents involving these type of break-ins and this possible suspect.
 "Q: And were you able to ascertain a name of a suspect?
"A: Yes, they were at a later time.
"Q: What was that name?
"A: I can't recall his name right offhand.
"Q: Okay.
"A: Jeffrey Burns, I'm sorry."
Detective McNabb was given Burns' name as a suspect after putting out the all points bulletin. He did not state who gave him this information. He did not identity the suspect in the photograph as Burns. In court, he did not identify Burns as the suspect. The only evidence that the suspect in the photograph was Burns was a hearsay statement from an unknown party. Further, the testimony indicated that Burns was a suspect, not thathe was the only suspect or that he was the person in the videotape. This is not substantial evidence that Burns committed the Geauga County offense. Therefore, the jury should not have been permitted to consider any evidence of the Geauga County offense, including the still photograph of the suspect.
Officers from the Euclid Police Department were permitted to testify regarding three break-ins in Euclid. There was testimony about the items taken, the type of buildings that were broken into, and that the break-ins all involved a large object being thrown through a glass window. However, there was no evidence presented that Burns committed these offenses. This testimony should have been excluded.
Patrolman Arizza testified about an incident where Burns was found standing outside of a Euclid business holding a large piece of concrete. Burns was wearing a camouflage jacket. Burns was arrested for trespassing and taken into custody. Patrolman Arizza testified that he witnessed an individual trespass on the property of various businesses. He then testified that he arrested the individual, and that while being arrested, Burns gave him his name and social security number. This is substantial evidence that Burns committed the crime of trespassing.
The only "other act" that passed the first prong of the Lowe test was the arrest of Burns. This is because there was not substantial evidence that Burns committed the break-ins in Euclid or Geauga County. Even if we were to find that there was substantial evidence that Burns committed these other acts, none of the offenses, including the incident regarding Burns' arrest, meet the second prong of the Lowe test.
Other acts may be introduced to prove identity for the crime charged if a modus operandi is established.[9] A modus operandi provides a "behavioral fingerprint" for the other act, which can be compared to the behavioral fingerprint for the crime in question.[10]
The state asserts that the distinct behavior that establishes modus operandi was the suspect broke a window with a large object, went to the cash register to steal money, and wore a camouflage jacket.
Breaking a window by using a large object is not enough to establish modus operandi for the crime of breaking and entering. Breaking a window is perhaps the easiest way to for a criminal to gain access to a locked building. Further, as Burns points out, the suspect in all these crimes did not use the same large object to break the windows. An unidentifiable large object was used in the Geauga County offense, a large rock was used at True Value, and a large piece of wood was used at 84 Lumber.
This court recently held that there was no modus operandi between two acts where the suspect in each act cut a wire that may have been connected to an alarm system before breaking into a business.[11] Since we held that cutting a wire and breaking into a building does not establish a modus operandi, the sole act of breaking into a building also fails to establish a modus operandi.
As far as stealing cash, is there a more commonly targeted object in a theft offense? We are not prepared to say that attempting to steal money out of a cash register is a unique or distinct act. The fact that the cash register was targeted does not establish a modus operandi.
Turning to the camouflage jacket, we also fail to hold that a modus operandi was established. First of all, there was no evidence presented that the person who broke into 84 Lumber was wearing a camouflage jacket. Detective Iliano testified that, due to the poor quality of the videotape, it was possible for the individual who broke into True Value to have been wearing a solid-type jacket. There was no evidence presented that crimes of breaking and entering committed in Euclid were the result of someone wearing a camouflage jacket. The state has not established that a camouflage jacket was worn by the suspect in all these crimes.
Even if the state had proved that all of these crimes were committed by an individual wearing a camouflage jacket, camouflage jackets are relatively common in today's society, and we do not find it unusual that a thief would wear a type of clothing, such as camouflage, that might assist them in avoiding detection. A camouflage jacket is not so unique as to establish a behavioral fingerprint.
Even when all these factors are taken together, we do not find anything extraordinary about them. An individual entered all of the buildings in what is arguably the most common means of entry by a criminal, breaking a window. Then in each case the cash register was targeted. We are left with the fact that in three of the seven offenses, the state showed that the suspect chose to wear a camouflage jacket. This is not a distinct behavioral fingerprint to establish a modus operandi.
We hold that the state did not meet its burden of providing substantial evidence that the Geauga County offense and the Euclid break-ins were committed by Burns. Further, there was no modus operandi relating any of the other acts to the crimes Burns was charged with. We find merit in Burns' first assignment of error as it relates to Evid.R. 404(B) and R.C. 2945.59.
Having found merit in Burns' first assignment of error relating to Evid.R. 404(B) and R.C. 2945.59, the evidence relating to other acts was inadmissible. Therefore, we will not conduct an analysis of the assignment of error relating to Evid.R. 403(A).
An error of admitting evidence that should have been excluded by Evid.R. 404(B) is reversible error unless there is a no reasonable probability that its admission contributed to the conviction.[12] There is a reasonable probability that the admission of the evidence of the other acts contributed to Burns' conviction. The jury heard evidence of four additional crimes of breaking and entering. They heard testimony regarding Burns' arrest in Euclid for trespassing. Finally, they were permitted to see a photograph of an unidentified individual with Burns' characteristics committing a criminal act in Geauga County.
Burns' conviction is reversed on this ground. However, we will also address the remaining assignments of error.
Burns' second assignment of error is:
 "The trial court erred to the prejudice of the defendant-appellant and violated his constitutional rights to fair trial and due process when it allowed in scientific evidence without the laying of a proper foundation."
Detective Iliano testified regarding an out-of-court experiment he conducted at 84 Lumber in October of 2000. Detective Iliano explained that he maneuvered around the inside of 84 Lumber on the day of the test and that these movements did not set off the store's motion detectors.
The admission of out-of-court tests is within the sound discretion of the trial court.[13] Burns contends that the detective was testifying as an expert. We do not agree. Detective Iliano's testimony was not beyond the common knowledge of a layman. Thus, he did not need to testify as an expert.[14]
A lay person can testify to out-of-court experiments. The lay person may not offer conclusions based on the experiment.[15] Detective Iliano did not offer any conclusions based on his experiment. He merely stated what happened on the day he was there.
An out-of-court experiment is admissible if there are substantial similarities between the conditions at the time of the experiment and the time offense.[16] Detective Iliano stated that he could not be certain that the conditions were the same on the day of the offense and the day of the experiment.
The foundation of this test was rather weak. However, Detective Iliano explained the test sufficiently, and admitted that the conditions may have been different on the night of the crime. Although a better foundation could have been provided as to the similarities of the motion detectors on the day of the test and the night of the crime, the trial court did not abuse its discretion by admitting the evidence of this informal test.
Burn's second assignment of error is without merit.
Burns' third assignment of error is:
 "The trial court erred to the prejudice of defendant-appellant when it denied his motion for acquittal made pursuant to Crim.R. 29."
A court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[17] To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[18]
The offense of breaking and entering is codified in R.C. 2911.13, which provides, in relevant part:
 "(A) No person by force, stealth, or deception, shall trespass in an unoccupied structure, with the purpose to commit therein any theft offense, as defined in section 2913.01 of the revised code, or any felony."
Theft offenses are defined in R.C. 2913.01. One of the offenses listed as a theft offense is theft, codified as R.C. 2913.02, which states, in relevant part:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "(1) Without the consent of the owner or person authorized to give consent; * * *."
Burns contends that the state failed to prove that Burns entered either True Value or 84 Lumber. The surveillance videotape shows an individual entering True Value. Although the videotape is of poor quality, it was sufficient evidence for that issue to go to the jury. Burns fingerprint was found at 84 Lumber. This is sufficient evidence to show he was at 84 Lumber.
Burns next asserts that the state failed to prove that anyone entered 84 Lumber with the intent to steal. There was testimony that there was a trail of broken glass from the broken window to the cash registers. An employee of 84 Lumber testified that boxes had been moved and that some merchandise was in disarray. This testimony was sufficient evidence to survive the motion for acquittal.
The trial court did not err in denying Burns' motion for acquittal. Burns' third assignment of error is without merit.
Burns' fourth assignment of error is:
 "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
By finding merit in Burns' first assignment of error, Burn's final assignment of error is moot.
The judgment of the trial court is reversed and this case is remanded for a new trial in accordance with this opinion.
ROBERT A. NADER, J., concurs, JUDITH A. CHRISTLEY, J., concurs in judgment only with Concurring Opinion.
[1] State v. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345.
[2] State v. Hector (1969), 19 Ohio St.2d 167, 174-175.
[3] (Emphasis added.) State v. Lowe, 69 Ohio St.3d at 530.
[4] State v. Carter (1971), 26 Ohio St.2d 79, paragraph one of the syllabus.
[5] Id. at paragraph two of the syllabus.
[6] Id. at 81.
[7] State v. Jamison (1990), 49 Ohio St.3d 182, 187.
[8] Id.
[9] State v. Lowe, 69 Ohio St.3d at 531.
[10] Id.
[11] State v. Elersic, 11th Dist. Nos. 2000-L-062 and 2000-L-164, 2001 Ohio App. LEXIS 5210, at *29-30, 2001-Ohio-8787.
[12] (Citations omitted.) State v. Cotton (1996),113 Ohio App.3d 125.
[13] Columbus v. Taylor (1988), 39 Ohio St.3d 162, syllabus.
[14] McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77, paragraph one of the syllabus.
[15] State v. English (1991), 77 Ohio App.3d 371, 379-380.
[16] Columbus v. Taylor, 39 Ohio St.3d at 164.
[17] Crim.R. 29(A).
[18] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.